McMILLAN, TREASURER, respondent, *v.* CARTER, appellant.

FACTS WITHIN THE ISSUES, NOT EXPRESSLY FOUND, and necessary to support the judgment, are presumed to have been in accordance with the judgment.

WHERE THERE IS NO REPLICATION, ALL AFFIRMATIVE MATERIAL ALLEGATIONS of the answer will be presumed to be admitted.

TAXATION — *When assessor may make assessment — Failure of tax payer to furnish list.*— An assessor, under section 1011 of the fifth division of the Revised Statutes, is authorized to list and assess the property of a tax payer, upon the failure of the latter to furnish the list required by such section. A formal demand by the assessor on the tax payer for a list is not necessary, when it appears that an effort to make a demand was made, and the tax payer evaded the furnishing of the list.

SAME — *Reason of failure to make list need not be entered on roll.*— The failure of the assessor to write in the assessment roll, when the assessment is made by himself, that the tax payer "refused to list," or such other words as will express the cause why the person required to make the list did not make it, will not invalidate the assessment.

FINDING THAT THE ASSESSOR ADOPTED THE ASSESSMENT is equivalent to a finding that the assessment made by the assessor was delivered to him and entered on the tax list.

FAILURE TO DELIVER THE LIST AND ASSESSMENT TO THE CLERK, when the tax list had passed from him into the hands of the treasurer, did not invalidate the assessment.

*Appeal from First District, Dawson County.*

THE opinion states the facts.

JOHN TRUMBULL, for the appellant.

HENRY N. BLAKE, District Attorney, for the respondent.

GALBRAITH, J.   This is an appeal from a judgment and an order overruling a motion for a new trial. The action was brought by the respondent, as treasurer of Dawson county, to recover the sum of $1,503.98 alleged to be due from the appellant for taxes for the year 1884, and the additional sum of $150.39, being ten per cent. of the sum due for taxes as a penalty, as provided for by law. The cause was tried by the court, a trial by jury having been waived. The findings by the court were as follows: "The court finds for the plaintiff, and finds that the treasurer made the assessment of his property in the sum of seventy-one thousand three hundred and eighty dollars ($71,380). That the tax due thereon is the sum of one thousand five hundred and three dollars and ninety-eight cents ($1,503.98), and that the penalty thereon now due is the sum of one hundred

and fifty dollars and thirty-nine cents ($150.39). That this assessment was adopted by the treasurer as his own, he having received it from the assessor after the tax book had been delivered to him by the clerk of the county of Dawson. That this book was delivered to the treasurer on the 15th day of November, 1884. That the assessment is a reasonable valuation of the defendant's personal property as appears by the evidence submitted as to the property and its value. That a notice was sent by mail by the treasurer to the defendant of the assessment and the amount, and the amount due for the above described taxes, which was put in the mail at Glendive, the county seat of Dawson county. That the taxes have not been paid, nor any part thereof, by the defendant, and that the whole amount is due with the penalty as above stated." Whereupon judgment was entered for the above amount for the respondent. The first finding evidently refers to the property of appellant. The exceptions taken upon the trial to the admission of testimony are not presented in such a manner in relation to pointing out the objection, as we have frequently held, that they can be considered by this court.

The questions presented for our consideration are: 1. Does the evidence support or justify the findings? 2. Is the judgment consistent with the findings? The correctness of the judgment in this case depends upon whether or not there was a substantial compliance with the provisions of the law in relation to levying and assessing the tax, and adding the penalty for failure to pay the same if properly levied and assessed, on or before the expiration of the time specified by law. There was no finding by the court that the tax was levied as required by law, but the complaint avers, and the answer admits, that upon the 7th day of January, 1884, the board of county commissioners of Dawson county levied the requisite taxes for said year, to wit, the sum of twenty-one mills on each dollar of the valuation. R. S. sec. 1019, 5th div. Neither is there a finding by the court that John J. O'Brien was the assessor of Dawson

county, but the answer alleges that John J. O'Brien was the duly elected and qualified assessor in and for said county for said year. There is no replication, and therefore no denial of this fact by the respondent; and where there is no replication all the affirmative material allegations of the answer will be presumed to be admitted. This is a fact which it was for the benefit of the respondent to have established. He did not attempt to introduce evidence to contradict it; but on the other hand, all the evidence tends to support such fact. It shows, at least, that at all the times of these transactions he was the acting assessor of Dawson county. This would be sufficient to render his official acts *prima facie* valid. The finding by the court that the treasurer made the assessment is not supported by the evidence. Indeed, this finding is substantially contradicted by the finding afterwards made that "this assessment was adopted by the treasurer as his own, he having received it from the assessor after the tax book had been delivered to him by the clerk of the county of Dawson." This is in substance a finding that the assessor did make the assessment. This, as we shall see hereafter, was properly done by him. It is the duty of the treasurer to make the assessment only when the assessor has failed to assess and place the same on the tax duplicate. He is not required to make the assessment in person. See R. S. sec. 443, 5th div.

Section 1011, 5th division of the Revised Statutes, provides that the district assessor of each county shall assess and value all property required by the provisions of this article to be assessed and valued; and between the 1st day of February and the 10th day of September in each year, shall demand of each tax payer a list as hereinafter provided of his or her or their property; and if the said list be not rendered under oath at the time such demand be made, the assessor shall proceed to list and assess the property of any such tax payer according to his best knowledge and information, and shall add twenty per cent. to the value thereof. The failure of the assessor to list and assess the

property between the 1st of February and the 10th of September in each year does not deprive him of the power to list and assess the same at any time. In this case the appellant did not render a list of his property under oath, but it was listed by the assessor. Had, then, the exigency occurred when the assessor might lawfully list the property? The testimony of the assessor is as follows: "I was assessor of Dawson county in the year 1884. (List of defendant's property shown him.) I made this list as assessor. I went out to his ranch about the 1st day of September, 1884; Carter was away when I got there; the cattle had strayed away; next morning I left his ranch, and made no assessment, the cattle being gone. He said he would be in Glendive before the county commissioners adjourned, and if he had to make out a list he would make it then. He came into Glendive; I spoke to him about it. He said Peter Gallagher was about to make it out for him. Soon after he left town; he went out of the territory to the south, and I got information from his cook, and so made out the list. I handed it to the deputy assessor, M. H. Brown, November 3, 1884."

Cross-examined: "I handed it in immediately to the deputy assessor. I went out to assess all the ranches on the Red Water. The defendant's ranch is on the Red Water. He claimed that he had paid taxes in Texas, and would see the county commissioners as to the matter. I don't know whether the cook was in his employ. When I got information from him I made out the list — the 3d day of November, 1884. Carter was not then in this county; he could not be found; I looked for him then."

Redirect: "I asked Carter, in September, 1884, for a list of his property. He thought he ought not to make out one."

This state of facts is, we think, sufficient to render an assessment by the assessor valid. When it appears that the assessor, on the 1st of September, went to the appellant's ranch to make the assessment, and the property not being

there, he promised to make out the list if he found he was required to do so, before the board of county commissioners adjourned. When he claimed that he had paid the taxes on the property in Texas, but left the territory without listing it, and did not show the only reason that he assigned for not doing so, viz., that the taxes had been paid in Texas, which fact does not appear anywhere in the record before us; and when, up to the time the list was made out, he could not be found in the county. We think that in such case the assessor might lawfully list the property. It may be that no formal demand upon the appellant was made; but such an effort to make a demand, and such a manifest evasion of the appellant's duty under the law, was equivalent to the demand required by the statute, and a refusal by the appellant to make out his list of property as required by law. It is true that the appellant testified that no demand for a list was made by the assessor, nor by any one for him. This is not necessarily a contradiction of the evidence given by the assessor, for he also testified that the assessor went with him to see the cattle, and that he saw him in Glendive. This would appear to be a corroboration of the evidence by the assessor; but even were it a contradiction, although there is no special finding of this fact by the court, that the exigency on account of which the assessor might list the property had occurred, nevertheless, from the fact that the court rendered judgment for the respondent, it will be presumed, especially under such a state of the testimony, that such exigency had occurred, and that the listing of the property by the assessor was done in pursuance of law. Facts within the issues, not expressly found, and necessary to support the judgment, are presumed to have been in accordance with the judgment. *Thompson* v. *O'Neil et al.* 41 Cal. 683.

When such a state of facts appears, the failure to write the words in the assessment roll by the assessor, when the list is made by himself, together with the words " absent or sick," or the words "refused to list," or "refused to swear,"

or such other words as will express the cause why the person required to make the list did not make it, as required by section 1015, division 5, of the Revised Statutes, will not invalidate the assessment. This section also provides that neglect to list his property by the tax payer shall be taken as a refusal. Such state of facts as that which appears above constitutes neglect. The finding that the treasurer adopted the assessment is simply equivalent to a finding which the evidence would warrant, that the assessment made by the assessor was delivered to him and entered on the tax list. The law does not require that the treasurer must make the assessment in person; and when the assessment was made by the assessor on the 3d of November, and afterwards delivered to the treasurer and entered by him on the tax list, this might properly be termed an adoption by the treasurer of the assessor's assessment. It is in evidence that the tax book, as it is called in the record, meaning, doubtless, the tax list which is required to be made out by the county clerk, was not delivered to the treasurer till the 15th of November, and that at this time this assessment was not contained therein; but that the list was handed direct to the treasurer by the deputy assessor in two or three days afterwards, and was then entered by the treasurer in the tax book. This, doubtless, is what is meant by the finding by the court that the treasurer adopted the assessment by the assessor.

This finding was probably made so as to bring the assessment within the provision of section 443, *supra.* But we are of the opinion that the failure to deliver the list and assessment to the clerk, when the tax list had passed from him into the hands of the treasurer, did not render the assessment invalid. It is claimed that the appellant had no opportunity to appear before the board of equalization; but the evidence shows that an attempt at an assessment was made on the 1st of September, which was prevented, as shown above, by the representations of the appellant. He should either have shown his exemption from taxation by

reason of his having been taxed, as he claimed, in another jurisdiction, if such claim of exemption was made in good faith, within a reasonable time, or have listed his property as required by law.

It appears that the assessor waited till the 3d of November before he made the list, and such list did not come into the treasurer's hands till about the 18th of November. Between this period and the 1st of December, when the tax became due and payable, the twenty days within which the law directs that the treasurer shall notify the tax payer of the amount of his tax had not expired. The commissioners are required to meet as a board of equalization on the third Monday of September, or at any time thereafter when it may become necessary. Sec. 1020, 5th div., R. S. The last meeting of said board was upon the 16th of October. The presumption, in the absence of anything to the contrary, is that public officers have performed their duties, and in this case that the commissioners met as often as they had reason to believe that it was necessary for this purpose. If, therefore, the appellant was deprived of his opportunity to appear before the board of equalization, he contributed thereto in great part by his own acts.

When the tax list did not contain the assessment when it was delivered to the treasurer by the clerk, and did not so contain the same till it was placed therein by the treasurer as the receipt of the list from the deputy assessor only about thirteen days before the tax became due and payable under the law; and when this state of things was in great measure brought about by the neglect and refusal of the appellant to list his property,—how could the treasurer be expected to notify him of his assessment within the twenty days of the delivery to him of the tax list as required by law? The finding of the court, supported by the evidence, shows an effort by the treasurer to notify the appellant of his assessment in so far as he was able so to do. All the circumstances of the case would indicate an effort at evasion by the appellant of the payment of his tax. The

amount of the personal road-tax and poor-tax is evidently included in the finding of the court of the whole amount due. This finding is supported by the evidence. This is in substance a finding that the appellant is subject to the payment of these taxes. There having been evidence upon this subject, and judgment for the respondent, this fact will be presumed to have been established. The finding of the court that the assessment is a reasonable valuation of the property is supported by the evidence. The finding, supported by the evidence, also shows that the appellant failed to pay tax on December 1st. The penalty was properly added as provided by law. Sec. 1026, 5th div., R. S.

The judgment is not inconsistent with the findings. *Chumasero* v. *Vial*, 3 Mont. 376.

The evidence and findings fully sustain the judgment.

Judgment affirmed, with costs.