[Civil No. 3440. Filed February 20, 1934.]

[29 Pac. (2d) 733.]

STATE TAX COMMISSION OF ARIZONA and M. A. MURPHY, FRANK LUKE and THAD M. MOORE, as Members of the State Tax Commission, Appellants, v. BOARD OF SUPERVISORS OF YAVAPAI COUNTY, ARIZONA, BOARD OF EQUALIZATION OF YAVAPAI COUNTY, ARIZONA, C. W. CARTER, T. B. JONES and WM. BYERS, as Members of and Constituting Said Board of Supervisors and Said Board of Equalization, and CHARLES H. RIEBELING, County Assessor of Yavapai County, Appellees.

Mr. Arthur T. La Prade, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for Appellants.

Mr. John A. McGuire, County Attorney, Mr. J. F. Moreno, Deputy County Attorney, Messrs. O'Sullivan & Morgan, and Messrs. Cornick & Crable, for Appellees.

McALISTER, J.—The state tax commission appeals from a judgment of the superior court of Yavapai County denying its application for a writ of *mandamus* requiring the board of supervisors of that county in their capacity as a board of equalization to comply with an order issued by the plaintiff directing it to raise the valuation of the mining claims of the United Verde Copper Company for the year 1933. The alternative writ was issued and the defendant demurred to the complaint upon various grounds and answered further by setting up certain facts. The plaintiff thereupon replied to the answer by moving to strike portions of it and demurring generally. The court denied the motion to strike and overruled plaintiff's demurrer but sustained the demurrers of the defendant, whereupon the plaintiff

announced it would stand upon its pleadings, and judgment for the defendant followed.

In this situation the correctness of the judgment depends wholly upon the sufficiency of the complaint, which alleges in substance as follows: The United Verde Copper Company owns about one hundred thirty-two mining claims in Yavapai county, Arizona, and on May 20, 1933, filed with the assessor of that county a list of its taxable property, except these mining claims, but on August 16, 1933, or two days after the state board of equalization had finished equalizing and adjourned, filed with the county assessor an unsigned and unverified list of these claims. The following day, August 17th, the assessor valued and assessed them at $8,162,043, as nonproducing mining claims. Two days thereafter, or on August 19th, the state tax commission by written order directed the board of supervisors to reconvene as a board of equalization and raise the valuation of these claims to $17,638,043 and to cause the assessment-rolls to be corrected to show this. The board reconvened pursuant to this order but refused to raise the valuation of the mining claims as directed, or at all, but approved and affirmed that made by the assessor.

The defendant demurred to the complaint on the ground that it did not state a cause of action in that section 3061, Revised Code 1928, under which the tax commission acted, does not give it the power to order an increase in the valuation of property without notice to the taxpayer or an opportunity to be heard, but that the power to increase the valuation upon the property of an individual after the adjournment of the state board of equalization rests solely in the county board of equalization, and then only after notice to the taxpayer and a hearing. They objected to the sufficiency of the complaint upon the further ground that section 3061, in so far as it authorizes

the tax commission to order the county board of equalization to raise the valuation of property without notice to the taxpayer or a hearing, is unconstitutional and void in that it violates the due process clause of the Constitutions of both the United States and Arizona (Const. Ariz. art. 2, § 4; Const. U. S., Amend. 14). The defendant admitted by way of answer that plaintiff had made the order directing the raise but denied its authority to do so, and averred further that after reconvening the defendant received evidence as to the value of the property but that in the exercise of its discretion it affirmed and approved the valuation fixed by the assessor.

By way of reply the plaintiff moved to strike that portion of the answer dealing with what occurred before the county board of equalization as immaterial, its contention being that it was the duty of the board to comply with the order of the commission, and demurred generally to the answer.

As stated above the trial court denied the motion to strike and overruled the demurrer to the answer but sustained the demurrer interposed to the complaint, and while the reasons for this action are not specially stated it is clear from the record that the court was of the view that the provisions of section 3061, the section upon which the commission relied as conferring upon it the power to require the county board of equalization to reconvene and raise the valuation of the property of an individual taxpayer to a definite sum, do not authorize such action, or, if they do, that it is violative of the due process clause of both the state and federal Constitutions. Hence, the two principal questions raised by the appeal are, first, whether this section confers the power to make such an order, and, second, if it does, whether it violates the fundamental law of the state and nation in the particulars mentioned. The pertinent parts of it read as follows:

"The commission shall appraise and assess all patented and unpatented producing mines, within the state, and on or before the second Monday of July transmit to the several boards of supervisors the assessed valuation thereof. The boards shall enter on the roll all assessments transmitted to them by the commission. The commission or its agents may enter upon, examine and appraise any and all properties within this state. It may require any county board of equalization, at any time after its adjournment, to reconvene and make such orders as it shall direct, may order such board to raise or lower the valuation of any property of any person, or the valuation of any class of property, and may order or direct such board or any assessor to value property, or classes of property in such way as to the commission may seem just and necessary, to the end that all property shall be valued and assessed equitably and at its full cash value."

The portion the commission particularly relies on for its authority is the last sentence and it is apparent from the mere reading of it that it is sufficiently broad, literally construed, to justify that body's position. However, it is only a part of one of the many provisions of the statute providing a set-up for the assessment of property and it must be interpreted in the light of these sections. If any one of these, or all of them treated as a whole, indicate that it was not intended that it should be given a literal construction it may be necessary to limit its meaning. A statement of the gist of these various sections will aid in determining the matter. They provide in substance as follows:

Between the first Monday in January and the twentieth day of May of each year the taxpayer shall deliver to the assessor a list of his property subject to taxation signed and sworn to and between the first Monday in January and the first day of May the assessor must assess all property and by the 20th of May complete the assessment-roll and deliver it to

the clerk of the board of supervisors. Sections 3074, 3075, 3076 and 3085, Rev. Code 1928.

On the first day of June the board of supervisors meets as a county board of equalization and may during that meeting change any valuation whether fixed by the assessor or the owner, and when its work is completed, which must be not later than June 10th, it adjourns to meet the first Monday in July. During the June and July meetings it shall require the assessor to place on the roll and assess any property subject to taxation not already there, or in his absence do so itself. Sections 3086 and 3089.

If the board increases the valuation of any property above that fixed by the assessor it must give notice to the taxpayer by publication and by mail in order that he may appear and protest at the July meeting, if he so desires. Section 3087. At that session it shall consider the various assessments specified in the notice and permit any taxpayer to object and offer evidence as to his assessment. Its decision as to valuation is final and shall not be questioned thereafter in any proceeding, unless an appeal to the superior court from the amount of the assessment fixed by the board on his property is taken by the taxpayer on or before September 15th following, but as a condition precedent to the taking of such action he is required to pay the county treasurer the full amount of the tax and at the same time file with that officer a protest stating the reasons why the assessment is excessive. Sections 3088 and 3090.

Upon adjournment of the county board of equalization it is the duty of the clerk to make in duplicate an abstract of the assessment-roll and transmit one copy to the state board of equalization which meets annually on the first Monday in August for the purpose of equalization, and adjourns on the second Monday after transmitting to the board of supervisors of each county the changes it has made and

the rate of taxes to be paid for state purposes. It has the power to equalize assessments on all property and to raise or lower valuations by classes in the different counties, or to increase the valuation on the property of an individual taxpayer by giving notice of its intention to do so and of the time and place of hearing. Sections 3063 and 3091.

Upon being notified what changes the state board has ordered the board of supervisors makes them and then fixes the county levy. And not later than the first Monday in September thereafter the assessment or tax roll, following the completion of the necessary computations therein, must be delivered to the county treasurer whose duty it then becomes, in case he ascertains that any property has been omitted from the tax roll, to levy and assess such property forthwith in the same manner the assessor might have done, and the tax so levied and assessed by him shall be as valid as if the assessment had been made by the assessor. Sections 3093, 3094 and 3113.

If it be discovered after this procedure has been gone through with that any property has escaped assessment section 3074 provides that it "shall be assessed at its full cash value for the current year and each year it escaped assessment."

Under this plan property finds its way on the tax roll through the assessor and the county board of equalization, except as provided in sections 3061 and 3113 which we notice later. The assessor's power to place it there extends to May 1st, when acting on his own volition, and to the end of the July meeting of the county board of equalization, when acting under the direction of that body. The board itself in the absence of the assessor may place on the roll property that has been omitted from it, but the power of either it or the assessor to do so after that date, unless directed by some other officer or board, does not exist. The result of the work of these officers,

including the valuations placed on omitted property added by them, is taken before the state board of equalization for review in the abstract of the assessment-roll, but that board has no power to add, or order added, property not already there.

It being true, therefore, that the jurisdiction of the county board to place omitted property on the roll ends the second Monday in July, the question naturally arises whether the set-up provides a way by which property the officers ascertain after that time has been omitted may be placed on the roll when discovered, or whether it must remain off for the remainder of that year and be assessed the following year as escaped property. The fact that the statute makes it the duty of the county treasurer, after the roll is turned over to him, to assess any property he learns has been omitted shows conclusively that it was the intention of the legislature that such property should be placed on the roll even after the first Monday in September. And in view of this, it could hardly have been the legislative purpose that the power to place, or order it placed, there between the second Monday in July and the first Monday in September, a period of about two months during which the roll is in the possession of the board of supervisors and being completed, did not rest somewhere, and a reading of the various provisions dealing with this subject makes it plain that it was lodged in the tax commission. Section 3061 provides that the commission may, "at any time after its adjournment," require any county board of equalization "to reconvene and make such orders as it shall direct, may order such board to raise or lower the valuation of any property of any person, or the valuation of any class of property, and may order or direct such board or any assessor to value property, or classes of property in such way as to the commission may seem just and necessary."

This language is practically all-inclusive in its terms. It confers upon the commission full power to deal with the matter of valuing and assessing property in the way it thinks best. The expressions, to "make such orders as it shall direct" and "to value property . . . in such way as to the commission may seem just and necessary," include by all reasonable intendments the power to value property not theretofore on the roll and which no other officer at that time has the right to place there. If, following the adjournment of the county board, it should come to the attention of the tax commission that certain property has been omitted from the assessment-roll, its power to require that board to make an order under either of these expressions would undoubtedly embrace one directing it to value such property at a sum fixed by the commission, and there is no way it could do this except by first adding it to the roll.

Appellee contends, however, that the power granted the commission does not authorize it to direct the county board to fix the assessment at a definite amount but rather to make some increase or decrease, the extent thereof to be determined by the board. The authority to order the "board to raise or lower the valuation of any property," when considered in connection with the power to "make such orders as it shall direct" and "to value property" in the way that seems "just and necessary" to the commission, undoubtedly implies the power to order the valuation fixed at the sum the latter concludes is proper. To construe it otherwise would nullify the authority given the commission to require the property to be valued in a way that seems just and necessary to it, because it could well be, as this case clearly illustrates, that the commission and the board might entertain wholly different views as to what valuation on the particular property would come within the

designation, "just and necessary." The order directing the board to raise to $17,638,043 the valuation of the nonproducing mining claims alleged to be erroneously assessed by the county assessor two days before at $8,162,043 shows what the commission thought would be just and necessary in this case, and though it used the word "raise" in its order to the county board, the substance of its language was that the board place the property on the roll at the valuation fixed therein. It could not be treated or regarded otherwise, since the action of the assessor in placing the property on the roll and assessing it more than five weeks after his authority to do so had expired was without any legal effect whatever, and the approval of it by the board of supervisors the same day added nothing to the legal status of the assessment because it had no authority in the premises.

It seems clear from the foregoing that the legislature intended to and did provide that following the expiration on May 1st of the assessor's authority to place property on the roll of his own volition omitted property may find its way there in one of the following ways: First, from May 1st up to the second Monday in July through the county board of equalization and the assessor acting on their own volition; second, from the second Monday in July to the first Monday in September through the same officers acting pursuant to an order of the tax commission; and, third, from the first Monday in September to the last of the year, through the county treasurer acting as assessor, his acts in that capacity being perhaps subject to the control of the tax commission. The result is that if at the end of the year any property has not found its way on the roll, it must be assessed the following year as escaped property, the purpose of these various sections being to provide a method whereby every piece of property shall bear each year

its just proportion of the tax burden and, if through the neglect of the taxpayer or the oversight of an official, it should fail to do so for any particular taxing season, it should not escape permanently but be required to carry its portion of the load for that period at a later time. It follows that the order of the tax commission was made in the exercise of the authority conferred upon it by section 3061 and unless the legislature went beyond its power in enacting the portion of that provision here involved the demurrers of appellee should have been overruled.

In view of this construction it becomes important to inquire whether the fact that this statute authorizes the tax commission to place, or order placed, on the tax roll property which has been omitted therefrom violates the due process clause of the federal and state Constitutions upon the ground that it does not provide that the taxpayer shall have an opportunity to be heard on the valuation before it is fixed. It is a principle of law recognized by all authorities that due process demands that every taxpayer be given this as a matter of right before the tax on his property becomes final. 26 R. C. L. 345, par. 302; *Londoner* v. *City and County of Denver,* 210 U. S. 373, 28 Sup. Ct. 708, 52 L. Ed. 1103; *Yuma County* v. *Arizona & Swansea R. R. Co.,* 30 Ariz. 27, 243 Pac. 907. It is apparent that the procedure outlined above does this as to property rightfully on the roll and it will aid in determining whether it has the same effect as to omitted property to point out just how it does this.

Any taxpayer who files with the assessor before May 20th, a verified list of his property subject to taxation or whose property is assessed by that officer by May 1st, or, if omitted from the roll by him and is placed there by order of the county board of equalization, has an opportunity to be heard on the amount of his assessment. He may appear before the county

board at its regular June meeting for this purpose and, if an increase in his assessment is ordered at that time, may be heard as to it at its July session. And the same is true of changes made by the state board of equalization. It may raise or lower valuations of property by classes at its August meeting, when anyone interested may be heard, or it may increase the assessment of any individual taxpayer but before doing so must give him notice of the time and place of hearing.

In addition, any taxpayer dissatisfied with the assessment as fixed by either the county or state board may, under sections 3090 or 3065, depending upon whether the appeal is from the action of the county or state board, have it reviewed by the court, but as a condition precedent to the exercise of this right he is required to pay the full amount of the tax levied on his property and sue to recover the portion he deems excessive. This additional opportunity is not necessary to render valid an assessment on the roll at the proper time and was not given for this reason, because the hearing thereon before the county or state board satisfies the requirement that the taxpayer must be accorded this right somewhere along the line, before the tax on his property becomes final. It was rather inserted to give those who feel that the valuation placed on their property by the taxing authorities exceeds its cash value another opportunity to establish this fact. And inasmuch as the validity of the assessment does not demand more than one hearing it follows that the privilege of appealing to the court was given as a matter of grace and not of right. Hence, no taxpayer may be heard to object to the requirement that he must pay the tax before asking the court to review his assessment. Since the due process clause is satisfied by the first hearing it is within the power of the legislature, if it sees fit to give him a second one in the form of

an appeal to the court, to attach to its exercise such reasonable conditions as it may desire. And the requirement that he first pay the full tax under protest, in view of the fact that the assessment has been made by the taxing authorities after full hearing and the further fact that the officers are presumed to do their duty, is reasonable and enforceable.

But the taxpayer who neither files with the assessor by May 20th a verified list of his taxable property nor calls to the attention of the assessor or the county board of equalization by the second Monday in July the fact that his property has not been placed on the roll is in a different situation. He has failed to do what the statute requires of him to make certain that his property is assessed and at a time that will enable him to have a hearing on his assessment before the county board, or later before the state board, if one should be desired. His neglect to list his property, or call attention to its omission in time to give him this right, must have been looked upon by the legislature as placing him in the attitude of one who had decided that he did not desire a hearing before either the county or state board but preferred to accept whatever assessment should later be placed on his property by the proper official. No other inference can be drawn from his failure to do his duty in this respect since it is the law that the authority to place omitted property on the roll does not cease on the second Monday in July but continues throughout the year under other officials. The various provisions for hearings were inserted for his benefit and if he does not do what the law requires of him at a time when it is possible for him to enjoy this privilege he should not be heard to complain of the valuation placed on his property. As said by the court in *City and County of San Francisco* v. *Flood,* 64 Cal. 504, 2 Pac. 264, 267:

"It is the duty of the taxpayer to furnish a true and correct list of his taxables to the assessor, and if he fails to do so, and any loss should result to him in consequence of such failure, his complaints on such score should meet with no favor in a court of justice."

As bearing on this proposition see the following: *McTwiggan* v. *Hunter,* 18 R. I. 776, 30 Atl. 962; *Glidden* v. *Harrington,* 189 U. S. 255, 23 Sup. Ct. 574, 47 L. Ed. 798; *McMillan* v. *Carter,* 6 Mont. 215, 9 Pac. 906.

It is contended by appellee, however, that even though section 3061 does not contravene the due process clause of the Constitution (article 2, section 4) in so far as it permits without a hearing the assessment of omitted property, it is broad enough in its terms to authorize the tax commission to require that body to increase without a hearing the valuation of one whose property has been equalized by the county or state board and which as fixed by them is satisfactory to the owner, and that a statute that permits such action is invalid. Even though this be true appellee is not in a position to assert it, because it is the "unquestioned rule," to use the language of this court in *Gherna* v. *State,* 16 Ariz. 344, 146 Pac. 494, 500, Ann. Cas. 1916D 94, "that a person cannot raise a constitutional objection to a part of a statute which is not applicable to his own particular case. The authorities are overwhelming to this effect." Having waived a hearing on its assessment the facts do not bring appellee within this rule. The validity of such an increase will be properly presented when a case involving one is here for decision.

It might be well, however, to say that under the set-up for assessing property, it occurs to us that there is no occasion to apply section 3061 to other than omitted property, and this being true it could

hardly be maintained, notwithstanding the breadth of its language, that the legislature intended it to be used otherwise. The state board of equalization, which is composed of the three members of the tax commission, has full power at its August meeting to order any raise it thinks proper in an assessment already on the roll, and there would appear to be no reason why it should be permitted to do this a second time. Hence, the legislature must have had in mind only omitted property when it incorporated section 3061 in the assessment code and it should be construed as applying to that only. But if it did refer to property already on the roll or if the taxpayer did not waive a hearing on his assessment, he still would have under section 3136 an opportunity to be heard on the validity of an increase made without a hearing. This section reads:

"§ 3136. *Tax not to be contested unless paid; collection may not be enjoined.* No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected, and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided."

This court has held, *Yuma County* v. *Arizona & Swansea R. R. Co., supra,* that under this section any taxpayer may test the validity of a tax upon any ground upon which he has not had an opportunity to be heard under other provisions of the law, and this would clearly include an increase in one's assessment made pursuant to an order of the tax commis-

sion at a time when it was not possible for him to have a hearing thereon. It is claimed, however, that because this section requires the payment of the tax before the taxpayer is permitted to test its validity, it deprives him of his property without a hearing and, therefore, does not constitute due process of law. It occurs to us that if the taxpayer has the right to recover in an action at law any portion of the tax he thinks has been illegally collected he is given a hearing thereon that satisfies due process. It is not absolutely necessary that he be present when he is assessed if some other manner of testing its validity is provided. In *McMillen* v. *Anderson*, 95 U. S. 37, 42, 24 L. Ed. 335, Justice MILLER speaking for the court said:

"It seems to be supposed that it is essential to the validity of this tax that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed. But this is not, and never has been, considered necessary to the validity of a tax. And the fact that most of the States now have boards of revisers of tax assessments does not prove that taxes levied without them are void.

"Nor is the person charged with such a tax without legal remedy by the laws of Louisiana. It is probable that in that State, as in others, if compelled to pay the tax by a levy upon his property, he can sue the proper party, and recover back the money as paid under duress, if the tax was illegal."

As having some bearing on the question see, also, *Hodge* v. *Muscatine County*, 196 U. S. 276, 25 Sup. Ct. 237, 49 L. Ed. 477; *Matthews* v. *Rodgers*, 284 U. S. 521, 52 Sup. Ct. 217, 76 L. Ed. 447; *Wisconsin Real Estate Co.* v. *City of Milwaukee*, 151 Wis. 198, 138 N. W. 642; *Nickey* v. *State*, (Miss.) 145 So. 630.

It should be kept in mind also that the principles involved in due process of law as applied to proceedings for the collection of public revenue by taxa-

tion are more summary in character than those applicable to cases of a judicial character. Governments must live and should not have their existence crippled or imperiled by the long delays which often attend formal judicial proceedings; hence, they try as far as possible to prevent claims for the collection of taxes from becoming subjects of judicial controversy according to the law of the land. To use the language of Justice HARLAN in *King* v. *Mullins,* 171 U. S. 404, 18 Sup. Ct. 925, 935, 43 L. Ed. 214:

"'Imperative necessity has forced a distinction between such claims and all others, which has sometimes been carried out by summary methods of proceeding, and sometimes by systems of fines and penalties, but always in some way observed and yielded to.' In *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 239, 10 Sup. Ct. 533 [33 L. Ed. 892], it was said that 'the process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them.' This must be so, else the existence of government might be put in peril by the delays attendant upon formal judicial proceedings for the collection of taxes."

It follows that section 3061 does not violate the due process clause of either the state or federal Constitution (Const. Ariz., art. 2, § 4; Const. U. S., Amend. 14) and, hence, that the order sustaining appellee's demurrers to the complaint was error. The judgment is reversed and the cause remanded, with instruction to the superior court to grant the peremptory writ of *mandamus.*

ROSS, C. J., concurs.

LOCKWOOD, J., dissents.