[Civil No. 3933. Filed November 29, 1937.]

[74 Pac. (2d) 47.]

JAMES L. POWELL, as Assessor of Cochise County, State of Arizona, and as Agent of the Motor Vehicle Division of the Arizona State Highway Department, Appellant, v. R. I. GLEASON, JOE COLFORD and SCHOOL DISTRICT NUMBER 2 of the County of Cochise, State of Arizona, Appellees.

Mr. Joe Conway, Attorney General, Mr. J. M. Johnson and Mr. W. E. Polley, his Assistants, and Mr. Frank E. Thomas, County Attorney of Cochise County, for Appellant.

Messrs. Sutter & Gentry, for Appellees.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Cochise county holding void, as unconstitutional, chapter 66 of the Regular Session of the Thirteenth Legislature of the state of Arizona. The chapter reads, so far as material to the issues of this case, as follows:

"1635a. . . . In addition to the fees provided by chapter 31, Revised Code of 1928, and amendments thereto, every owner of a motor vehicle, trailer or semi-trailer operated upon the highways of this state, if such vehicle be subject to a registration fee, shall pay annually to the county assessor, at the time of the application for registration, a tax on such motor vehicle, trailer or semi-trailer equal to three cents on each dollar of the full cash value of such vehicle, provided that the taxes on any motor vehicle, trailer or semi-trailer registered from any incorporated city or town in this state, shall be four cents on each dollar of full cash value of such vehicle, and provided further that such tax on any new vehicle or any vehicle not previously registered in this state, which shall be registered after the beginning of the registration year, shall be reduced by one-twelfth for each full month that shall have elapsed since the beginning of the registration year for which registration is sought at the time when such vehicle becomes subject to registration. No motor vehicle, trailer, or semi-trailer shall be registered without the tax herein provided shall have been paid.

"1635b. . . . The county assessor shall determine and fix the full cash value of such vehicle at the time the tax is paid. The *prima facie* full cash value shall be as follows:

"1. During the first calendar year of the life of the vehicle sixty per centum of the manufacturer's list price of a similar or corresponding model of the same make, plus the cost or manufacturer's list price of equipment, apparatus, hoists, other types of body, or other equipment attached to or added to the vehicle after its purchase, and not included in the manufacturer's list price of the vehicle.

"2. During each succeeding year thereafter the *prima facie* full cash value shall be determined by reducing the *prima facie* full cash value for the first calendar year of the life of the vehicle, one-fourth; provided, that the *prima facie* full cash value shall not be reduced below the sum of one hundred dollars.

"1635c. . . . The county assessor shall determine and fix the full cash value of such vehicle at the time the tax is paid. The *prima facie* full cash value shall be as follows:

"1. During the first calendar year of the life of the vehicle sixty per centum of the manufacturer's list price. of a similar or corresponding model of the same make, plus the cost or manufacturer's list price of equipment, apparatus, hoists, other types of body, or other equipment attached to or added to the vehicle after its purchase, and not included in the manufacturer's list price of the vehicle.

"2. During each succeeding year thereafter the *prima facie* full cash value shall be determined by reducing the *prima facie* full cash value for the first calendar year of the vehicle thirty-three and one-third per cent. and thirty-three and one-third per cent. during each succeeding calendar year; provided, that the *prima facie* full cash value shall not be reduced below the sum of two hundred and fifty dollars.

"3. Motor vehicles, trailers and semi-trailers, which are operated in this state in interstate commerce, shall be assessed, hereunder, by the vehicle superintendent at that proportion of such full cash value, as the whole number of miles travelled, or which it is estimated will be travelled annually in this state, bears to the total annual mileage so travelled, or which it is estimated will be travelled, by such vehicle. Such mileage shall be estimated and determined by the vehicle su-

perintendent under such rules and regulations as he shall from time to time prescribe. All taxes collected under subsection 3 shall go to the state general fund.

"1635d. . . . For the purpose of *ad valorem* taxation, motor vehicles shall be deemed to constitute a class separate and distinct from other tangible personal property or classes thereof. The tax herein imposed shall be in lieu of all other taxes on any such motor vehicle as tangible personal property but shall not be deemed to affect any excise tax or tax based upon factors other than the value thereof. The tax on any motor vehicle shall never be charged against nor deemed to constitute a lien on the real property of the owner thereof.

"1635e. . . . The county assessor shall forthwith transmit from the taxes collected under the provisions of this act upon any vehicle, to the state treasurer an amount equal to one-fourth cent on each dollar of the full cash value of the vehicle together with a statement showing the vehicle taxed, its full cash value, the residence of the owner of said vehicle, the amount of the tax collected, and exemptions allowed. If the vehicle is registered from any incorporated city or town in this state the county assessor shall forthwith transmit to the treasurer of such city or town for the use of such city or town an amount equal to one cent on each dollar of the full cash value of such vehicle. The balance of the tax received by the county assessor shall be paid into the county treasury to be properly distributed by the county treasurer."

Briefly summarized, it provides as follows: When the owner of a motor vehicle applies for its annual registration he shall pay to the county assessor a tax thereon which is calculated in the following manner: The assessor fixes the *prima facie* cash value of the car, if it be of that year's model, at 60 per cent. of the manufacturer's list price, and for each succeeding year deducts one-fourth of the first year's valuation, but never reduces the *prima facie* cash value below the sum of $100. The owner is required to pay a tax equal to 4 cents on the dollar of valuation thus

fixed, if he be a resident of an incorporated town or city in Arizona, otherwise at 3 cents on the dollar. If the application for registration be made at any time after the beginning of the calendar year, the tax paid is reduced by one-twelfth for each full month that has elapsed from the beginning of the year until the time of the application. This is the method under section 1635a which applies to motor vehicles not used as common carriers. The valuation of motor vehicles operating as common carriers is fixed under section 1635c, and is based upon a somewhat different method. Motor vehicles are declared to be a class separate from other tangible personal property for the purpose of *ad valorem* taxation. The tax so levied and collected is declared to be in lieu of all other taxes upon motor vehicles as tangible personal property, but does not exempt them from the payment of any excise tax or a tax based on factors other than the actual value thereof. This tax is distributed by the assessor to the state, the county treasurer, and the city or town in which the owner resides in the proportions fixed in the chapter.

It is claimed by appellees that this statute is unconstitutional for a number of different reasons, which we shall consider as seems advisable. We think the first thing for us to do is to determine the nature of the tax in question. Taxes fall into many different classes, and the tests as to their validity frequently differ in accordance with their nature. The three principal forms now in use are *ad valorem* property, excise, and income taxes. The phrase "*ad valorem*" means, literally, "according to the value," and is used in taxation to designate an assessment of taxes against property at a certain rate upon its value. Webster's New International Dictionary. An *ad valorem* property tax is invariably based upon ownership of property, and is payable regardless of whether it be used

or not, although of course the value may vary in accordance with such factor. It is neither intended nor expected that it be passed on, though under some circumstances, as with rental property, this may be done. It, for many years, has been the chief, and frequently the only, method of securing revenue for the states and their local subdivisions. An excise tax, on the other hand, is a direct tax laid on merchandise or commodities, which is generally meant to be passed on to the consumer. It may or may not have an *ad valorem* factor therein. *Scholcy* v. *Rew,* 23 Wall. (90 U. S.) 331, 23 L. Ed. 99. Income taxes are precisely what the name signifies; taxes based on income in money, gross or net. We think the legislature has fixed the nature of the tax in question in section 1635d, *supra.* Motor vehicles are first placed in a separate class from other tangible personal property. It then is declared that this is done for the purpose of *ad valorem* taxation, and that the tax imposed by the act is in lieu of all other taxes on the property as tangible personal property, but that it shall not be deemed to relieve it of any excise tax or tax based on a factor other than its value. It would be difficult to set forth the essentials of an *ad valorem* property tax more clearly, and we unhesitatingly hold, therefore, that the tax in question falls within that class.

■■ The first objection to the constitutionality of the law is that the owners of automobiles are denied due process of law in the fixing of the valuation thereon, in that they have no opportunity of being heard upon the question of whether the true value of the property be that fixed by the assessor or not. It is, of course, elementary that in levying a tax having the actual value of certain property as one of its factors, whether it be strictly what is known as a direct property or an excise tax, the owner thereof must, at some time before the tax is irrevocably fixed,

have an opportunity, as a matter of right and not of grace, to appear and be heard on the question of valuation before some tribunal which has the jurisdiction to determine the true value of the property. *Londoner* v. *Denver,* 210 U. S. 373, 28 Sup. Ct. 708, 52 L. Ed. 1103; *Yuma County* v. *Arizona & Swansea R. R. Co.,* 30 Ariz. 27, 243 Pac. 907, 909. And it is urged that no such opportunity is given by the act. On examining its terms, we find that the assessor is directed to fix the full cash value of the motor vehicle in question at the time the tax is paid, and a definite rule is laid down by the legislature as to how he shall do so. The act, however, also provides that the amount fixed by him is merely *prima facie* the full cash value. The words *"prima facie,"* as used in statutes and legal phraseology, merely mean a fact presumed to be true unless disproved by some evidence to the contrary, but it always implies that the proper party shall have the opportunity of offering proof in rebuttal of the *prima facie* fact. Is there any method found in our statutes whereby a party aggrieved by the valuation fixed upon his automobile may present such evidence as to its true value before a tribunal which has jurisdiction to hear and determine that value? There is nothing in chapter 66, *supra,* providing for such a hearing, but it has been urged that section 3136, Rev. Code 1928, gives it. This section read as follows:

"Tax not to be contested unless paid; collection may not be enjoined. No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be

maintained to recover any tax illegally collected, and
if the tax due shall be determined to be less than the
amount paid, the excess shall be refunded in the man-
ner hereinbefore provided.''

We have had the meaning and scope of this
section under consideration in a number of cases. In
*Yuma County* v. *Arizona & Swansea R. R. Co., supra,*
in construing paragraph 4939, Revised Statutes of Ari-
zona 1913 (which is identical in substance with 3136,
*supra*), we said:

"In *Arizona Eastern R. Co.* v. *Graham County,* 20
Ariz. 257, 179 Pac. 959, we used language that might
be construed as limiting the right of action under
paragraph 4939 to recover only when the law under
which it was levied was invalid. We do not think such
a construction justified as we believe the Legislature
intended to give the taxpayer the right to test the
validity of the tax upon any ground upon which he
has not had an opportunity to be heard under other
provisions of the law.''

And we have reaffirmed that holding in *State Tax
Com.* v. *Board of Supervisors,* 43 Ariz. 156, 29 Pac.
(2d) 733. It is true that in *State Tax Com.* v. *Shat-
tuck,* 44 Ariz. 379, 38 Pac. (2d) 631, we held that sec-
tion 3136, *supra,* was not applicable to the intangible
tax law discussed in the case just cited, for the reason
that such taxes were not paid to the county treasurer,
but to the State Tax Commission. In the chapter
now under consideration, the taxes involved are paid
to the county assessor, rather than to the county treas-
urer, but we think the difference is immaterial. *Ad
valorem* property taxes are usually collected by the
counties through their county treasurers, and then dis-
tributed in the manner provided by law. We think,
in reason, the section applies to such taxes when col-
lected by the county assessor, as well as by the treas-
urer, since in both cases it is the county, in effect,

which receives the taxes, though through different officers, and a suit to recover the tax illegally collected is brought against the county. In the case of *Sears, Roebuck & Co.* v. *Maricopa County,* 41 Ariz. 304, 17 Pac. (2d) 1096, the county assessor, acting under the provisions of section 3081, Revised Code 1928, attempted to collect personal property taxes. In order to prevent the distraint and sale of its property, the company paid the taxes to the assessor, and not to the treasurer, under protest claiming that the valuation was excessive, and thereafter brought suit against Maricopa county to recover the excess. We think the only theory under which that suit could have been brought against the county is that section 3136, *supra,* was applicable for the reason that the county assessor was acting as the agent for the county, and that the payment to him was, in effect, payment to the county just as much as if it had been made to the treasurer. We hold, therefore, that any person aggrieved by the *prima facie* valuation fixed by the assessor under chapter 66, *supra,* had the right to pay the tax under protest, and thereafter to bring suit to recover the excess under the provisions of section 3136, *supra.* This right was sufficient to satisfy the due process of law clause of the federal Constitution (Amendment 14). *State Tax Com.* v. *Board of Supervisors, supra; McMillen* v. *Anderson,* 95 U. S. 37, 24 L. Ed. 335.

■ The next objection is that the classification for the purposes of taxation made by the chapter is an unwarranted one. In the absence of a constitutional prohibition, the legislature of a state may classify property for taxation. Our Constitution not only does not prohibit classification, but, as a matter of fact, implies that this can and will be done. Section 1, art. 9, Const. of Arizona. The only limitation on the power of our legislature in that respect is that the classification

must not be arbitrary, must be based upon some real and substantial difference in the classes, and must not be in conflict with any of the provisions of the Constitution. *People's Finance & Thrift Co.* v. *Pima Co.,* 44 Ariz. 440, 38 Pac. (2d) 643; *State Tax Com.* v. *Shattuck, supra.*

 Let us examine the classification made by chapter 66, *supra,* and see whether it violates any of these principles. The act establishes one major classification which is subdivided into many parts. The first classification is the setting aside of all motor vehicles into a class separate from any other form of property. This, we think, is legitimate, for it is obvious that motor vehicles have many qualities in common which naturally distinguish them from all other classes of property. These motor vehicles are then divided in fact, although not by name, into many other subclasses, motor vehicles of each class differing from any other in regard to the tax due on the same value and location. We find (a) those which are registered and which must, therefore, pay the tax set forth in the chapter, and (b) those which, because the owner does not apply for registration, are not required to pay the tax. Class (a) contains twelve subdivisions, in accordance with the calendar month in which the vehicle is registered, and each one of those subdivisions pay a different tax on the same valuation. Each of these twelve subdivisions again contain three classes; (1) motor vehicles used in interstate commerce; (2) motor vehicles used in intrastate commerce; and (3) those used for other purposes. The amount of tax paid on an automobile of any given value will depend upon which one of these numerous classes it falls into. There may be no less than thirty-seven different motor vehicles of the same type, value, and ownership, each paying a different tax. Let us illustrate. A owns

thirty-seven passenger cars of the same year, model, and list price. One is not registered at all during the current year, and thus pays no tax. He registers twelve of the remaining thirty-six for use in interstate commerce, twelve for intrastate commerce, and twelve for local use; one of each class being registered on the first day of each month of the calendar year. Notwithstanding each car is of the same value, no two pay the same tax, and one pays no tax at all. B, residing in the same city, is an automobile dealer and owns a dozen cars, which he is holding for the purpose of sale, of the same make and value of one which is owned and operated on the highway by A. Naturally, B's cars are not registered until they are purchased by someone for use, and if he is unable to sell them during the calendar year, he pays no *ad valorem* tax whatever on them, while A must pay his tax. Such a classification, we think, violates section 2, article 9 of the Constitution of Arizona, which contains the following language:

"All property in the State not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law."

Were this a use tax, such as that imposed in some states for the privilege of using the public highways, such a classification would be reasonable; but since it is, as we have pointed out, an *ad valorem* property tax, we think that to exempt motor vehicles which are not being operated on the highways from any form of property tax, while exacting such a tax from those which are being so used, and to levy a different tax on those of equal value according to the length of time they are used, violates the constitutional provision in question. We hold, therefore, that the classification of the act which provides that no *ad valorem*

property tax need be paid until and unless the motor vehicle is registered, and the classification which provides that the tax shall be proportioned to the number of months of the calendar year for which the car is used before registration, are arbitrary and capricious in their nature, and violations of section 2, article 9, Constitution of Arizona, as granting either total or partial exemption from an *ad valorem* property taxation. These provisions are so interwoven with the remainder of the act that it is impossible to separate them, and still leave a practical working law.

It is unnecessary for us to discuss the other objections raised.

The judgment of the superior court of Cochise county holding chapter 66, *supra,* to be void as in violation of the constitution of Arizona, is affirmed.

McALISTER, C. J., and ROSS, J., concur.