McKAY BUICK, INC., a corporation, et al., Respondents,

v.

James R. SPRADLING, Director of the Department of Revenue of the State of Missouri, et al., Appellants.

No. 59174.

Supreme Court of Missouri, En Banc.

Nov. 10, 1975.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., for appellants.

David V. G. Brydon and James C. Swearengen, Jefferson City (Hawkins, Brydon & Swearengen), Jefferson City, for respondents.

BARDGETT, Judge.

In this declaratory judgment case the circuit court of Cole County upheld the constitutionality of Senate Bill 402 (§ 150.010, RSMo 1969, as amended 1974) enacted by the 77th general assembly in 1974 as against the contentions of appellants, director of revenue of Missouri and the tax commission of Missouri, that the act violated Art. X, § 4(a), (b), Mo.Const., as amended. In addition to § 150.010 being a revenue law of this state, this appeal involves the construction of the Constitution of Missouri and, therefore, this court has jurisdiction of the appeal. Art. V, § 3, Mo.Const., as amended.

Plaintiffs-respondents are motor vehicle dealers in Missouri and instituted this suit in circuit court seeking a declaration that § 150.010, as amended by Senate Bill 402 in 1974, is constitutional, and an order directing defendants-appellants to proceed with the taxation of respondents' motor vehicles and their goods, wares and merchandise held for use and sale in accordance with the provisions of § 150.010, as amended, and to

enjoin said appellants from proceeding to tax respondents under the provisions of § 150.010 as it existed prior to the 1974 amendment.

Prior to the adoption of the 1974 amendment, § 150.010 provided:

150.010. Definition of merchant

Every person, corporation, copartnership or association of persons, who shall deal in the selling of goods, wares and merchandise at any store, stand or place occupied for that purpose, is declared to be a merchant. Every person, corporation, copartnership or association of persons doing business in this state who shall, as a practice in the conduct of such business, make or cause to be made any wholesale or retail sales of goods, wares and merchandise to any person, corporation, copartnership or association of persons, shall be deemed to be a merchant whether said sales be accommodation sales, whether they be made from a stock of goods on hand or by ordering goods from another source, and whether the subject of said sales be similar or different types of goods than the type, if any, regularly manufactured, processed or sold by said seller.

Motor vehicle dealers were subject to the same ad valorem property tax as other merchants and the tax on their motor vehicles and their stock of goods, wares and merchandise was computed in accordance with § 150.040 which provides:

150.040. Amount of tax to be paid

Merchants shall pay an ad valorem tax equal to that which is levied upon real estate, on the highest amount of all goods, wares and merchandise which they may have in their possession or under their control, whether owned by them or consigned to them for sale, at any time between the first Monday in January and the first Monday in April in each year; provided, that no commission merchant shall be required to pay any tax on any unmanufactured article, the growth or produce of this or any other state, which may have been consigned for sale, and in which he has no ownership or interest other than his commission.

The phrase "amount of all goods, wares and merchandise" as used in 150.040 means the value in money of those items. That percentage of the value in money which becomes the base against which the tax rate or levy is applied is the "assessed valuation". Under the provisions of § 137.115, RSMo 1969, as amended 1973 (Laws of Mo. 1973, p. 213), the assessed valuation of real and personal property is a sum equal to 33⅓% of its true value in money.

In 1974 the general assembly repealed 150.010 and enacted in lieu thereof § 150.-010 (Senate Bill 402) referred to herein as the 1974 amendment. Senate Bill 402, as truly agreed to and finally passed, is set forth in footnote one [1] below.

1. *Be it enacted by the General Assembly of the State of Missouri, as follows:*

Section A. Section 150.010 RSMo 1969, is repealed and two new sections enacted in lieu thereof to be known as sections 150.010 section 1 and section 2.

150.010. 1. Every person, corporation, copartnership or association of persons, except motor vehicle dealers as defined in this act, who shall deal in the selling of goods, wares and merchandise at any store, stand or place occupied for that purpose, is declared to be a merchant. Every person, corporation, copartnership or association of persons doing business in this state shall, as a practice in the conduct of such business, make or cause to be made any wholesale or retail sales of goods, wares and merchandise to any person, corporation, copartnership or association of persons, shall be deemed to be a merchant whether said sales be accommodation sales, whether they be made from a stock of goods on hand or by ordering goods from another source, and whether the subject of said sales be similar or different types of goods than the type, if any, regularly manufactured, processed or sold by said seller.

2. The term "merchant" includes motor vehicle dealers as defined in this act, but motor vehicle dealers shall not be subject to any ad valorem tax on his stock of goods, wares and merchandise, as otherwise prescribed by this chapter and a *motor vehicle property tax* as prescribed by this act shall be levied in lieu of such ad valorem tax.

Section 1. As used in this act, unless the context clearly requires otherwise, the following terms mean:

(1) "Motor vehicle dealer" any person, firm, corporation, copartnership or association of persons primarily engaged in the business of selling motor vehicles, except farm tractors.

(2) "Motor vehicle" any vehicle propelled by an internal combustion engine and licensed for operation or operated upon the highways, but shall not include farm tractors.

(3) "Dealer" any person, firm, corporation, copartnership or association of persons or their agents or subagents engaged in the sale or exchange of new, used or reconstructed motor vehicles.

2. *Motor vehicles and the stock of goods, wares and merchandise held for use and sale by motor vehicle dealers* in the ordinary course of their business *are hereby classified as a separate class of personal property* and in lieu of ad valorem personal property taxes thereon, the *value thereof is fixed* and a motor vehicle *property tax* is imposed thereon as follows:

(1) New motor vehicles

2.43 Dollars, ($2.43).

(2) Used motor vehicles

1.50 Dollars, ($1.50).

(3) Goods, wares, and merchandise other than motor vehicles

0.57¢ Dollars, ($0.57).

3. (1) The tax on new motor vehicle and on goods, wares and merchandise, other than motor vehicles, shall be imposed at the time of sale or transfer of each new motor vehicle. The tax on used motor vehicles shall be imposed at the time of sale or transfer of each used motor vehicle.

(2) No tax shall be imposed on the sale or transfer of any motor vehicle from one dealer to another dealer.

(3) The tax computed by Subparagraph 3 of Subsection 2 of Section 1, above, is a per unit tax on each new motor vehicle.

4. The tax imposed shall be paid by the motor vehicle dealer and shall not be charged directly to the purchaser.

5. The payment of the *motor vehicle property tax* imposed by this act shall be evidenced by a tax stamp which shall be affixed by the dealer to each application for title at the time of sale, and no motor vehicle purchased in this state from a dealer licensed in this state may be registered with the department of revenue unless the tax stamp is so affixed.

6. (1) The *motor vehicle property tax* stamps required by this act shall be purchased or manufactured by the director of the department of revenue in the required amounts. The stamps shall be of such design, color combination and material as the director shall deem necessary and he shall provide how the stamps shall be affixed to the application for title. The director may require any manufacturer of the stamps to furnish a bond in any amount he deems necessary.

(2) The director of revenue shall distribute the motor vehicle *property tax* stamps to the county collector of each county and the license collector of the city of St. Louis, taking such receipt therefore as may be necessary, and the county collector and the license collector of the city of St. Louis shall have the responsibility of the custody and sale of the stamps and shall have the duty of accounting for the stamps to their respective counties.

(3) All motor vehicle dealers shall purchase the motor vehicle *property tax* stamps from the county collector of the county and the license collector of the city of St. Louis where the dealer's place of business is located.

7. The county collector and the license collector of the city of St. Louis shall, at the end of each month apportion all collections from the sale of the motor vehicle *property tax* stamps to the appropriate taxing authorities within his county and to those of the state of Missouri on the same basis as if the revenue were ad valorem tax revenues minus two percent which shall be remitted to the department of revenue to reimburse the state for the cost of the stamps and enforcement involved, and minus two percent which shall be retained by is office for the cost of handling the transactions required to administer this tax.

8. All revenues collected by the county collectors and the license collector of the city of St. Louis under the provision of this act, less two percent which is to be returned to the department of revenue to reimburse the state for the cost of the stamps, and less two percent which shall be released by the county collector and the license collector of the city of St. Louis for handling the stamps and the tax, shall be deposited by him in the county treasury. On or before January first of each year the county collector and the license collector of the city of St. Louis shall submit a statement to the county treasurers and the treasurer of the city of St. Louis of the exact amount due each political subdivision and to the state of Missouri as determined by applying the local rates of property tax levy to the revenues collected taking into account the proportion each tax rate bears to all others within the county. The several county treasurers and the treasurer of St. Louis city are hereby directed to distribute, prior to February 1 of each year, all amounts so received from the county collector and the license collector of the city of St. Louis according to the allocations made in his statement.

Section B. The Director of Revenue shall have the power to revoke or suspend the license of any dealer who willfully fails or

Article X, §§ 3, 4(a) and 4(b), Mo.Const., provides:

Section 3. Limitation of taxation to public purposes—uniformity—general laws—time for payment of taxes—valuation. Taxes may be levied and collected for public purposes only, and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. All taxes shall be levied and collected by general laws and shall be payable during the fiscal or calendar year in which the property is assessed. Except as otherwise provided in this constitution, the methods of determining the value of property for taxation shall be fixed by law.

Section 4(a). Classification of taxable property—taxes on franchises, incomes, excises and licenses. All taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property. The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned. Nothing in this section shall prevent the taxing of franchises, privileges or incomes, or the levying of excise or motor vehicle license taxes, or any other taxes of the same or different types. ·

Section 4(b). Basis of assessment of tangible property—taxation of intangibles—limitation. *Property in classes* 1 and *2 and subclasses of class 2, shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class and for each subclass of class 2.* Property in class 3 and its subclasses shall be taxed only to the extent authorized and at the rate fixed by law for each class and subclass, and the tax shall be based on the annual yield and shall not exceed eight percent thereof. [Emphasis added.]

Article X, § 8, limits the state tax on real and tangible personal property, except for that necessary to pay any bonded debt of the state to *ten cents on* each *hundred dollars assessed valuation.* Article X, § 11(b), limits municipalities and counties and school districts to various rates or levies on *each one hundred dollars assessed valuation.* Article X, § 14, requires the general assembly to establish a commission (state tax commission) to equalize assessments as between counties and to hear appeals from local boards in individual cases and, on appeal, *to correct any assessment* which is shown to be unlawful, unfair, arbitrary, or capricious.

The constitutional and statutory provisions set forth above are not exhaustive of all laws relating to taxation in this state but are set forth because these provisions bear directly on the issue in this case and because the court is fully aware of the caution set forth in *Hull v. Baumann*, 345 Mo. 159, 131 S.W.2d 721 (1939), where the court, in construing the validity of a taxing statute said at 726: "An act of the Legislature should not be declared unconstitutional unless it appears beyond a reasonable doubt that it is in contravention of the Constitution."

All taxes are not subject to the same constitutional limitations or inhibitions. It is, therefore, necessary that the nature of the tax imposed by the 1974 amendment be determined. In *Powell v. Gleason*, 50 Ariz. 542, 74 P.2d 47, 114 A.L.R. 838 (1937), the court said at 50: "Taxes fall into many different classes, and the tests as to their validity frequently differ in accordance with their nature. The three principal forms now in use are ad valorem property,

---

refuses to affix the tax stamps herein provided to the application for title in the manner provided in Section 301.430, RSMo, and shall provide by regulation the manner in which an application for title shall be proc-

essed should a dealer fail, refuse or neglect to affix said tax stamps.

Section C. The provisions of this act shall become effective on January 1, 1975. [Emphasis added.]

excise, and income taxes. The phrase 'ad valorem' means, literally, 'according to the value,' and is used in taxation to designate an assessment of taxes against property at a certain rate upon its value. . . . An ad valorem property tax is invariably based upon ownership of property, and is payable regardless of whether it be used or not, although of course the value may vary in accordance with such factor. . . . It, for many years, has been the chief, and frequently the only, method of securing revenue for the states and their local subdivisions. An excise tax, on the other hand, is a direct tax laid on merchandise or commodities, . . . It may or may not have an ad valorem factor therein. *Scholey v. Rew*, 23 Wall. (90 U.S.) 331, 23 L.Ed. 99. Income taxes are precisely what the name signifies; taxes based on income in money, gross or net. . . ."

In *General American Life Ins. Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458, 462 (1952), this court, in considering the nature of the tax there involved, said: "The instant case involves a property tax, expressly so designated in the constitution, Art. 10, § 4, . . . and made subject to specific constitutional inhibitions. Excises include ' ". . . every form of taxation which is not a burden laid directly upon persons or property; in other words, excises include every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation." ' [citing cases.] Excises are not subject to all the constitutional inhibitions applicable to taxes on property. They are valid as revenue measures if they operate alike upon all within the same class of subjects."

The 1974 amendment, on its face, declares itself to be a property tax on motor vehicles. It undertakes to tax "as a separate class of personal property" motor vehicles and the stock of goods, wares, and merchandise held for use and sale by motor vehicle dealers. It declares that the value of such personal property "is fixed" and

assesses a "motor vehicle property tax" at $2.43 on new motor vehicles; $1.50 on used motor vehicles, and $0.57 on goods, wares, and merchandise other than motor vehicles. The tax is imposed at the time of sale or transfer of each motor vehicle. The payment of the tax is to be evidenced by "motor vehicle property tax stamps" affixed to the application for title. All revenues collected under the 1974 amendment are to be apportioned to the appropriate taxing authorities (county, school district, state, etc.), the same as if the revenue were ad valorem property tax revenues, less certain collection costs.

The legislative declaration in the 1974 amendment that the tax imposed thereby is a property tax, and the other provisions of that amendment reflecting the same purpose, makes it clear beyond doubt that it was the intent of the legislature to impose a property tax on the designated tangible personal property. Indeed, one of respondents' points is that the 1974 amendment can be upheld as a true ad valorem property tax.

The court holds that the 1974 amendment imposes a property tax on the tangible personal property described in the statute.

Because the tax in question is a tax upon property designated as class 2 in Art. X, § 4(a), of our constitution, the tax is governed by the provisions of Art. X, § 4(b), relating to class 2 property (tangible personal property) and subclasses thereof.

Article X, § 4(b) requires that tangible personal property be assessed for tax (property tax) purposes at its value or such percentage of its value as may be fixed by law.

Other provisions of our constitution noted supra place a limitation on the levy or rate that can be legally adopted by the state and other political subdivisions. That limitation is expressed in dollars and cents per one hundred dollars of assessed valuation.

The assessed valuation is a variable which may differ as between various items of taxable personal property, but whatever

figure in money that is finally determined to be the assessed valuation, that figure becomes the base against which the levy or rate is applied with the result being the dollar amount of the tax due.

The constitutional scheme for the taxation of property as set forth through Art. X of the constitution requires that there be a valuation factor, for it is that valuation factor that the taxpayer is entitled to challenge in the local boards of equalization or adjustment and in the constitutionally mandated state tax commission. Art. X, § 14.

In short, Art. X requires that when tangible personal property is taxed there must be an assessed valuation placed upon the property. And, if there is no assessed valuation placed upon the property, then the tax is constitutionally invalid as a direct tax upon tangible personal property under Art. X, § 4(b), of the constitution.

In *Robert Williams & Co., Inc., v. State Tax Commission of Mo.*, 498 S.W.2d 527 (Mo.1973), the court said at 528: "Mo.Const. Art. X, §§ 3 and 4(b), V.A.M.S., which control taxation of all property in Missouri, *Boonville National Bank v. Schlotzhauer*, 317 Mo. 1298, 298 S.W. 732, 737 (1927), require that all real and tangible personal property be assessed for tax purposes at its value or such percentage of its value as may be fixed by law. This has been held to mean that such property must be assessed on the basis of 'actual or real value.' [citing cases.]" [2]

Respondents argue that the designation of motor vehicles held for sale in the usual course of business as a subclass of personal property is authorized by Art. X, § 4(a), (b), and that the legislature itself fixed the value of the property to be taxed in the 1974 amendment. The amendment provides that the property designated therein is "hereby classified as a separate class of personal property and in lieu of ad valorem personal property taxes thereon, *the value thereof is fixed* and a motor vehicle proper-

ty tax is imposed thereon as follows . . . ." (Emphasis added.)

The legislature's designation of motor vehicles held for sale in the usual course of business as a subclass of class 2 personal property under Art. X, § 4(a), (b), finds general support in *Walters v. City of St. Louis*, 364 Mo. 56, 259 S.W.2d 377 (1953), *Hull v. Baumann, supra*, and *Barhorst v. City of St. Louis*, 423 S.W.2d 843 (Mo. banc 1967). In other jurisdictions the subclassification for ad valorem property tax purposes of motor vehicles held for sale by motor vehicle dealers has been upheld. See *Wheir v. Dye*, 105 Mont. 347, 73 P.2d 209 (1937); *Powell v. Gleason, supra*, 50 Ariz. 542, 74 P.2d 47, 114 A.L.R. 838, and annotation at 847.

However, as pointed out in *Powell v. Gleason, supra*, 74 P.2d at 50, "[i]t is, of course, elementary that in levying a tax having the actual value of certain property as one of its factors, whether it be strictly what is known as a direct property or an excise tax, the owner thereof must, at some time before the tax is irrevocably fixed, have an opportunity, as a matter of right and not of grace, to appear and be heard on the question of valuation before some tribunal which has the jurisdiction to determine the true value of the property. *Londoner v. Denver*, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103; *Yuma County v. Arizona & Swansea R. R. Co.*, 30 Ariz. 27, 243 P. 907, 909." See also *John Calvin Manor, Inc., v. Aylward*, 517 S.W.2d 59, 63 (Mo.1974), and 72 Am. Jur.2d, State & Local Taxation § 782.

Under the 1974 amendment, one must recognize that all new and used motor vehicles held for sale by motor vehicle dealers are taxed the same at the time of sale regardless of value. The same tax is assessed against a new 1976 Rolls-Royce as is levied against a new Pinto. The same tax is levied against a 20-year-old-used car with 150,000 miles on it as is levied on a 6-

---

2. Sec. 137.115, RSMo 1969, as amended 1973, now provides for the assessment of

real and tangible personal property to be 33⅓% of its true value in money.

month-old-used car having been driven only 500 miles. Nor does the amount of tax due bear any relationship to the yield or revenue accruing to the business by the sale or use of motor vehicles. The declaration contained in the 1974 amendment that "the value thereof is fixed" sets no value at all.

■ To fix the value of something must mean that there is a value in money attributed to it. Here, there is no value in money attributed to the property taxed nor is any method set forth to arrive at a value or money base for the computation of the tax. Because there is no money value attributed to the property taxed by the 1974 amendment, the court is not called upon to decide whether the legislature can constitutionally set a fixed dollar amount as the money value of an entire class of property or whether the legislature is restricted by Art. X, §§ 3 and 4(b), to providing the *method* of determining the value of the property for tax purposes and setting the percentage of the value to be taxed.

■ The court holds that the 1974 amendment eliminates the value factor from what it declares to be a property tax and is, therefore, constitutionally invalid as a property tax under Art. X, § 4(b).

■ Respondents seek to uphold the 1974 amendment as a tax "in lieu" of the tangible personal property tax or as a tax of the "same or different" type under Art. X, § 4(a).

In support of their position that the 1974 amendment is valid as a taxing statute "in lieu" of the tax on tangible personal property, respondents rely upon *William A. Straub, Inc., v. City of St. Louis*, 506 S.W.2d 377 (Mo.1974). In *Straub* the question decided was whether the city of St. Louis could levy an ad valorem tangible personal property tax on the lessees of certain equipment which equipment was owned by the American National Bank in St. Louis where

**3.** Sec. 148.110 was amended in 1972 so as to permit to taxation of tangible personal property held for lease or rental to others.

the bank had paid the taxes assessed against it under § 148.030, RSMo 1969. Section 148.030 imposed a tax of 7% of the bank's net income and § 148.110 provided that the tax imposed by 148.010 to 148.110 [3] is in substitution for all taxes on tangible and intangible personal property and for all property taxes on the shares of such banking institution. The case did not directly involve the constitutional validity of chapter 148, the Bank Tax Act of 1946, as it applied to banks. In *General American Life Ins. Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458 (1952), the court struck down as unconstitutional an "in lieu" statute on the grounds that it exempted all intangible personal property owned by insurance companies from taxation contrary to the provisions of Art. X, § 6, Mo.Const. In the course of deciding the General American case, the court, at 465, set forth the rationale underlying Art. X, § 4(c), Mo.Const., the provision specifically directed to the taxation of banks. In short, the separate provisions in our constitution reference taxation of banks was necessitated by federal laws relating to national banks. This court said that Art. X, § 4(c), recognized that situation and "is not an assumption of the existence of general authority in the lawmakers to enact substitute tax legislation in contravention of specific constitutional inhibitions."

*Straub*, when considered in the light of Art. X, § 4(c), Mo.Const., and *General American Life Ins. Co. v. Bates, supra*, does not support respondents' position in this case.

Respondents point to the "Private Car Tax", chapter 152, RSMo Supp.1973, which imposes a tax of 3% on the total amount received for the rental of certain railroad cars in Missouri, as an example of a tax in lieu of a tangible personal property tax. The constitutionality of chapter 152 is not before the court in this case. Nevertheless,

*Straub* involved an assessment for the year 1970.

it is to be observed that chapter 152 provides a method of arriving at a value in money base for personal property, railroad cars, which is representative of the value of the use of those cars in Missouri to the taxpayer and sets the rate to be applied against that base.

In other words, the legislature, acting pursuant to Art. X, § 3, has provided the method of determining the value of the property (railroad cars) for taxation purposes.

The 1974 amendment to § 150.010 provides no method for determining the value of the property for taxation but simply eliminates the value factor altogether from a tax denominated a motor vehicle *property* tax. This is not permissible under Art. X, § 4(b).

If the 1974 amendment is a tax "in lieu" of the property tax, then it is not a property tax. The same is true if it is a tax of a different type.

The 1974 amendment must stand or fall as a property tax on motor vehicles. This is so because of other parts of the 1974 amendment set forth supra wherein the legislature clearly mandated that the proceeds of this tax are to be apportioned to the appropriate taxing authorities of the county and the state on the same basis as if the revenue were ad valorem taxes.

All parties agree and the 1974 amendment makes clear that the tax imposed thereby is a tax upon motor vehicles.

Art. IV, § 30(b), Mo.Const., as amended in 1962, provides in part:

Section 30(b). Source and application of state highway funds. For the purpose of constructing and maintaining an adequate system of connected state highways all state revenue derived from highway users as an incident to their use or right to use the highways of the state, including *all* state license fees and *taxes upon motor vehicles*, trailers and motor vehicle fuels, and upon, with respect to, *or on the privilege of the* manufacture,

receipt, storage, distribution, *sale or use* thereof (excepting the sales tax on motor vehicles and trailers, and all property taxes), . . . *shall be credited to a special fund and stand appropriated without legislative action for the following purposes, and no other* . . . . [Emphasis added.]

If the tax imposed by the 1974 amendment is not a constitutionally valid property tax, and the court has held supra that it is not, and if it is not a sales tax, which it obviously is not, then the revenue derived from this tax on motor vehicles constitutionally stands appropriated to the state highway fund for the designated highway-related purposes set forth in Art. IV, § 30(b) of our constitution. Those purposes do not include the general support of the various taxing authorities or the state of Missouri. Therefore, even if the taxing portion of the 1974 amendment could be upheld as a type of tax other than a property tax, the legislative scheme set forth in the 1974 amendment as to the distribution of the revenues derived therefrom could not be accomplished in view of Art. IV, § 30(b), Mo.Const., as amended. If the 1974 amendment were a constitutionally valid property tax, the provisions of the act with respect to the allocation of the revenues would present no problem for property and sales taxes are excepted from the requirements of Art. IV, § 30(b), supra.

The legislature designated the tax imposed by the 1974 amendment to be a *property* tax on a subclass of tangible personal property (certain motor vehicles). The court holds that the tax imposed is unconstitutional as a property tax under Art. X, § 4(b), Mo.Const., for the reasons stated supra.

The tax cannot be upheld as some other type of tax and at the same time give effect to the other provisions of the 1974 amendment, reference distribution of the revenues, in view of Art. IV, § 30(b), Mo. Const., as amended.

There is no basis upon which it could be said that the legislature would have repealed § 150.010 as it existed prior to the 1974 amendment and have enacted the taxing portion of the amendment without also requiring that the revenues be distributed to the same taxing authorities which receive the revenues from ad valorem tangible personal property taxes.

Respondents argue that there are gross inequities in the assessment of new and used cars and the stock of goods, wares, and merchandise held for use and sale by motor vehicle dealers. Whatever the inequities may be, they cannot be corrected by unconstitutional means.

The judgment is reversed and the cause is remanded to the circuit court with directions to vacate its judgment and orders previously entered and to enter judgment holding Senate Bill 402 of the 77th general assembly, the 1974 amendment to § 150.010, RSMo 1969, unconstitutional in its entirety.

All concur.