[Commissioners Court of Washington County, et al. v. State, ex rel. Fairford Lumber Co.] .

# Commissioners Court of Washington County, *et al. v.* State, *ex rel.*

## *Prohibition.*

(Decided May 18, 1911. 55 South. 623.)

1. *Taxation; Assessment; Escape.*—Construing sections 2102, 2119, and 2151, Code 1907, it is held that the provision as to when the assessor shall make his assessment is directory merely, and that an assessment for escaped taxes, made after May and reported to the court of county commissioners, is valid.

2. *Same; Corporate Stock.*—Having reference to section 2082, subdivision 9, Code 1907, it is held that the provision that the shares of capital stock shall be assessed to the person in whose name they stand, is merely directory, being for the information of the assessor, and not of the substance of the assessment, and that the assessment may be made against the corporation. (Prior to Acts 1907, p. 1489, shares could not be assessed against the shareholders.)

3. *Same; Equalization; Adjudication.*—An adjudication by the state tax commissioner as to the entire valuation of a corporation's property is no bar to the assessment of taxes upon the capital stock of the corporation, since the two classes of property are entirely distinct.

4. *Constitutional Law; Due Process; Assessment of Corporate Stock.*—Section 2082, subdivision 9, Code 1907, is not unconstitutional as depriving the stockholders of their property without due process of law, for under the direct provisions of section 2182, the stockholders cannot be deprived of their stock by the assessor, except by an assessment against them, and the proceedings in such case is merely a sort of attachment proceedings in favor of the state against the stockholders.

5. *Prohibition; Grounds; Other Remedy.*—The fact that the state board of equalization has determined the value of the corporation's property, such adjudication being claimed as a bar to proceedings in the commissioners' court as to an assessment of the capital stock, presents no ground for prohibition restraining the commissioners court from proceeding with the case, since such a defense is available in the commissioners' court.

6. *Same; Taxation.*—The commissioners' court cannot be restrained from proceeding with an assessment upon the capital stock of the corporation made under subdivision 9, section 2082, Code 1907, merely because those assessed claimed that this assessment will result in double taxation, for it is one of the duties of the commissioners' court to determine such matters, and the person so assessed has a remedy by appeal, and hence, is not entitled to prohibition.

APPEAL from Washington Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Petition by the State of Alabama, on the relation of the Fairford Lumber Company, a corporation, and others, against the Court of County Commissioners of Washington County and the individual members thereof, to restrain the said court of county commissioners from levying and collecting a certain tax. From an order granting the petition, respondents appeal. Reversed and rendered.

The petition is as follows: "(1) That relator Fairford Lumber Company is a corporation, chartered under the general laws of the state of Alabama, with its principal place of business at Fairford, Washington county, Ala.; that relator John Fussey is a stockholder of said Fairford Lumber Company, and owns 75 shares of the stock of said corporation. That relator Earl G. Conger is a stockholder of said corporation, and owns 212 shares of said stock, and that Thomas H. Kelly is a stockholder of such corporation and owns 50 shares of said stock, and each are over the age of 21 years. (2) That the said Fairford Lumber Company, a corporation, has listed annually and regularly all of its real and personal property for taxation, but the officers of said company inadvertently failed each year to file the statement required by subdivision 9 of section 2082, Code 1907, showing the names of the stockholders in said corporation, and the value of the stock in said corporation. Relators allege and aver, however, that the said stock of said corporation in its entirety is not now and has at no time been worth more than the value of the taxable property of said corporation, and at no time was said stock of said corporation liable or subject to assessment; said stock having no value over and above the property owned by the corporation, and has not now

and never has had any market value whatever. (3) That on, to wit, the 6th day of June, 1910, and after the June term of the commissioners' court of Washington county had adjourned, one M. L. Smith, the tax assessor of Washington county, reported in writing to the commissioners' court that he, as assessor, had assessed against said Fairford Lumber Company all of the said shares of the stock of said corporation, for the years 1906, 1907, 1908, 1909, and 1910, respectively, said Smith claiming that said stock had escaped assessment for the years last above mentioned; and upon the filing of said assessment said court of county commissioners issued a notice to the relator Fairford Lumber Company, notifying it to appear and contest said assessment; but no notice or process at any time whatsoever was ever issued to or served upon the individuals named as relators herein, nor to or upon any other of the stockholders of said corporation. (4) Relators respectfully aver and show unto your honor that the said tax assessor was wholly without authority to make said assessment, and that the filing of said purported assessment by him on the said 6th day of June, 1910, did not give the said court of county commissioners of Washington county jurisdiction of said matter, and said court of county commissioners had no legal right or authority or jurisdiction to proceed to hear and determine said matter, for the reason that, at the time said M. L. Smith filed said purported assessment, the time which he as assessor was allowed by law to make assessments on property had expired; it being expressly provided by section 2102 of the Code of 1907 that the tax assessor must commence assessment of taxes on the 1st day of October of every year, and that assessments shall be finished by him the 1st day of February following, but that the assessor may be allowed

until the first Monday in May in each year to make supplemental assessments upon property which he may have failed to assess prior to the 1st day of February, but by no provision of law is the tax assessor given authority to make assessments after the first Monday in May. (5) That on, to wit, the 11th day of July, 1910, the relator Fairford Lumber Company filed an objection in the said court of county commissioners to said court assuming or taking jurisdiction of said matter, but without the consent and over the protest of the said Fairford Lumber Company the said court of county commissioners continued said cause until Friday, the 5th day of August, 1910, and will on said day proceed to hear and determine said cause, and either confirm, modify, or reject the said assessment. Unless they are restrained and prohibited from hearing said matter, they have given relator Fairford Lumber Company to understand that they will hear and determine said cause on said day, though the Fairford Lumber Company has most strenuously objected to said hearing, and to said court taking jurisdiction of said matter, until an assessment is made in the mode and manner provided by the statutes of this state. That, as aforesaid, neither the individuals named herein as relators, nor any of the other stockholders, have ever been made parties to the proceedings in said commissioners' court, and no notice of any kind has ever been served on them, and if judgment should be rendered against said corporation, requiring said corporation to pay taxes on said shares of stock, and requiring the said stockholders to repay to the said corporation the amount so paid out by said stockholders, said stockholders will have been deprived of their property without due process of law. (6) Relators further show, in addition to all the other matters hereinabove set out, that at the July term,

1909, of the commissioners' court of Washington county, the said Fairford Lumber Company, after having been duly and legally served with notice to appear and show cause why amount of its assessment should not be raised, appeared before said court of county commissioners, said court being then and there attended by the State Tax Commission and the said Fairford Lumber Company, State Tax Commission and court of county commissioners entered into an agreement as to the valuation to be placed upon the property of the Fairford Lumber Company for the years 1908, 1909, and 1910, and the said Fairford Lumber Company has faithfully, honestly, and conscientiously lived up to and fulfilled said written agreement in all particulars." The petition concludes with the prayer to prohibit and restrain the court from usurping jurisdiction in the matter, and from hearing and passing upon what purports to be the escaped taxes in this case.

GRANADE & GRANADE, for appellant. If the appellees have any cause of action whatever, it is not by prohibition, as they show no grounds for resort to this extraordinary remedy.—*Ex parte Green & Graham*, 29 Ala. 52; *Ex parte Peterson*, 33 Ala. 74; *Ex parte Boothe*, 64 Ala. 312; *Ex parte Due*, 116 Ala. 491; *State ex rel. Bradley*, 134 Ala. 549; *State ex rel. v. Washington County*, 151 Ala. 561; *Goodwyn v. State ex rel. Wakefield*, 145 Ala. 540; High on Extraordinary Remedies, section 759 and 770. This writ never lies to prevent an erroneous exercise of any jurisdiction which the court has.—Authorities supra, and *Ex parte City of Mobile*, 24 Ala. 98; *Ex parte Keeling*, 50 Ala. 474; *Ex parte Hamilton*, 51 Ala. 62; *Ex parte Mobile County*, 63 Ala. 349; *Epperson v. Rice*, 102 Ala. 668. The assessment was properly made under the provision of sub-

division 9, section 2082, Code 1907, and it will be pre-
sumed that the officer did his duty, that the assessment
was valid, thus putting the burden on the relator to
show to the contrary.—*Lehman-Durr & Co. v. Robinson,*
59 Ala. 222; *Dunklin v. Wilson,* 64 Ala. 162; *Perry
County v. Selma & Marion Railroad,* 65 Ala. 399; *Paul
v. Malone & Collins,* 87 Ala. 544; *State v. Kidd,* 125 Ala.
423. The assessor could properly make assessment for
escaped taxes and report the same to the commissioners
court after the 1st of May.—Section 2119, Code 1907.
In fact, the commissioners have that authority them-
selves.—Sections 2148, 2151 and 2152.

TURNER, WILSON & TUCKER, and STEVENS & LYONS,
for appellee. The assessor was wholly without author-
ity to make the assessment.—Section 2102 and 2119,
Code 1907; *East v. Eichelberger,* 69 Ala. 187. It be-
comes the duty of the back tax commissioner after May
1st, to make the assessments that have escaped for the
current year.—Sec. 2248, Code 1907; *T. C. I. & R. R. Co.
v. The State,* 141 Ala. 103. The corporate property and
the corporate shares are two separate and distinct
things not taxable as a whole, but as property belong-
ing to different owners.—*Board of Revenue v. Mont-
gomery Gas Pipe Co.,* 64 Ala. 269. This proceedings
in unwarranted and in violation of the fundamental
law as a deprivation of property without due process.
—Sec. 13, Constitution 1901; *Jones v. Railway Co.,* 141
Ala. 388; *Randolph v. Builders & Painters Supply Co.,*
106 Ala. 501. An assessment against one other than
the owner of property is absolutely void.—*State L. Co.
v. Mitchell,* 162 Ala. 469; *Crook v. Anniston C. L. Co.,*
93 Ala. 4. Prohibition is the proper remedy.—32 Cyc.
604 and notes; 23 A. & E. Enc. of Law, 197; *Ex parte
Morgan Smith,* 23 Ala. 94; s. c. 34 Ala. 455; *Ex parte*

*Hamilton,* 51 Ala. 62; *Ex parte Brown,* 58 Ala. 536; *Turner v. Bradley,* 134 Ala. 551; *Ex parte State,* 150 Ala. 489. It may be used to prohibit the enforcement of a void decree from which no appeal lies.—*Ex parte Lyon,* 60 Ala. 650; *Pettus v. McKinney,* 56 Ala. 41; *Ex parte State, supra.*

SOMERVILLE, J.—This is an appeal from a judgment and order of the circuit court, upon the petition of the appellees, granting a temporary writ of prohibition against the commissioners' court of Washington county, restraining it from further proceeding in a certain cause pending before it, with the usual rule nisi returnable to the next term of the court. The proceeding as to which the writ was sought and granted is one arising from an assessment of the corporate stock of the Fairford Lumber Company by the county tax assessor; the assessment being for escaped taxes for the years 1906-1910, inclusive, and being made to the corporation itself, instead of to the owners of the stock, and being filed by the assessor and reported to the commissioners' court on June 6, 1910, after the adjournment of its June term. Upon this assessment and report the commissioners' court assumed to take jurisdiction of same, and issued the statutory notice to the Fairford Lumber Company, notifying it to appear and contest the assessment; but no notice was given to the several stockholders, who are joined with the corporation as relators in the petition. The entire petition will be found set out in the reporter's statement of the case.

In order that the issues presented by the petition may be clearly understood, we reproduce a statement thereof as found in the brief of relators' counsel, viz.: "(1) Because the entire proceedings are based on a

void assessment. (2) Because the proceedings are predicated on the assessment made by the assessor, after the time prescribed by. law for his making assessments had expired, and his authority to make such assessments had ceased. (3) Because the assessment is for taxes alleged to be due on the corporate shares, or stock of a corporation, and is assessed to the corporation, and not to the persons in whose names such shares stand on the books of said corporation. (4) Because no notice was given of said proceedings to the parties in interest, or to the owners of the property sought to be taxed. (5) Because it is an effort on the part of the court of county commissioners to deprive the owners of the property sought to be taxed of their property without due process of law. (6) Because the valuation of the taxable property of the Fairford Lumber Company was fixed and settled by a written agreement between the said Fairford Lumber Company, the court of county commissioners, and the State Tax Commission, entered into at the July term, 1909, of the said commissioners' court of Washington county. (7) Because it is a double assessment."

1. It is insisted for relators that, under sections 2102 and 2119 of the Code, tax assessors can make no valid assessments after the first Monday in May of each year, and that the assessment here complained of, being made on June 6th, was a mere nullity, and incapable of giving any jurisdiction to the commissioners' court to proceed thereon under section 2151 of the Code of 1907, and that an attempt to proceed on a void assessment is properly restrained by a writ of prohibition. Section 2102 provides that the assessor must commence making his assessments on October 1st, and finish them on February 1st following, but allows him until the first Monday in May for making supplemental assessments; and section 2119 provides that "whenever

the assessor, *while assessing* the property and other subjects of taxation in his county, shall discover that property has escaped taxation in any assessment within five years next preceding, he shall assess the taxes against such property," etc. It concludes by declaring that "any assessor who shall knowingly permit any property to escape taxation shall be deemed guilty of willful neglect of duty." Section 2151 provides that this assessment shall be by the assessor reported in writing to the commissioners' court, who, on five days' notice to the person against whom the assessment is made, shall at any regular, special, or adjourned term proceed to allow, modify, or reject the assessment.

It is obvious that many of the statutory provisions which prescribe the duties of public officers, and the time and mode of their discharge are designed simply and only to satisfy the exigencies of the public service, and not for the convenience or protection of the people. This is especially true of those offices in the administration of which system and dispatch are desirable or necessary, and where action is ministerial and ex parte in its character and operation. The rule as to what provisions are mandatory, and what directory only, is admirably stated in *French v Edwards,* 13 Wall. (U. S.) 506, 20 L. Ed. 702, in quoting and approving which this court said, per Stone, J., in *State Auditor v. Jackson County,* 65 Ala. 142, 153: "We concur in opinion with the Supreme Court of the United States that those legislative directions which have for their object the protection of the taxpayer against spoliation, or excessive assessment, must be treated as mandatory. But, if there be enough to show that the assessment is so made and evidenced as to be understood, then regulations designed for the information of the assessor, or other officer, intended to promote dispatch, method, system, and uniformity in modes of proceeding, are

merely directory. So clerical and ministerial duties,
the observance or nonobservance of which do not affect
the taxpayer injuriously, must be classed as directory."
In view of these well-settled principles, we cannot as-
sent to the proposition advanced by relators that tax
assessors cannot effectually discover escaped taxes, ex-
cept while engaged in making their regular assess-
ments of other property prior to the first Monday in ·
May. The provision as to the time of discovery is purely
and manifestly directory, and the assessment com-
plained of was legally made, so far as the record shows.
We prefer to place our conclusion on the broad ground
above stated, rather than on the narrower one, which is
perhaps avaiable, that the time specified in the statute
relates only to the *discovery* of the escaped taxes, and
not to making the report of the assessment; the petition
not disclosing when the *discovery* was made.

2. The assessment complained of was made *to the
corporation,* being of the shares of its stock owned in
severalty by Fussey, Conger, and Kelly, corelators with
the corporation. No report was ever made to the asses-
sor on the part of the corporation, as required by sub-
division 9 of section 2082 of the Code, informing him
as to the number of shares of its capital stock, the
names and addresses of its stockholders, and the vari-
ous other matters therein specified. It is insisted for
relators that the assessment thus made is void, because
the statute (subdivision 9 of section 2082) declares in
terms that such stock "shall be assessed  *  *  *  to
the person in whose name such shares stand · on the
books of the corporation, and *not to the corporation.*" ·

The answer to this contention is furnished by the
statute itself, which declares that "it shall be no ground
for objection to such assessment of shares that the same
is entered upon the assessment books in the name of the
corporation." Construing this clause in connection with

the one first above quoted, it is quite evident that the
first, while it expressed a *preferred* mode of assessment,
is yet directory only, in so far as the *validity of the
assessment* is concerned. Prior to the act of February
18, 1897 (Acts 1897, p. 1489), the shares of the capital
stock of any company or corporation required to assess
its property in this state could not be assessed against
the shareholders. Subdivision 8, § 451, Code of 1886.
And since by that act, found substantially unchanged in
subdivision 9, § 3911, of Code of 1896, and subdivision
9, § 2082, of Code of 1907, the corporation is still re-
quired as formerly to pay for its shareholders the taxes
assessed against the stock, the conclusion is strength-
ened that assessment to the individual owners, as di-
rected, is a matter of form merely, for the information
or convenience of the assessor perhaps, but not of the
substance of the assessment.

3. It is, however, insisted that, conceding that the
statute (subdivision 9, § 2082, of Code of 1907) in terms
permits the assessment of the stock to the corporation,
nevertheless such an assessment is unconstitutional, in
so far as it involves a valuation and assessment of the
property thus represented by a proceeding to which the
shareholders are not parties, and of which, in the pres-
ent case, they have had no notice nor opportunity to de-
fend; the argument being supported by a reference to
a provision of the statute under review that, the corpo-
ration having paid for the shareholders the tax assessed
against their shares. "The amount so paid for any
shareholder shall be a lien on any interest which such
shareholder may have on any property owned by the
corporation," thereby leading, it may be, to an appro-
priation of his property without due process of law.
Relators' contention as thus stated is founded upon an
erroneous view of the nature of the assessment pro-
ceeding which they seek to prevent. Their petition does

not and cannot bring before us for redress or adjust-
ment the mutual rights of the corporation and its
shareholders. The only question raised is whether an
assessment of individually owned shares is valid, when
made to or against the corporation, to the extent of im-
posing upon *the corporation* the duty of paying the
taxes so assessed; for neither the assessment, nor any
subsequent proceedings thereon, can result in taking
relators' stock from them, since the tax collector can
levy upon and sell corporate stock for unpaid taxes
only when the assessment has been made against *the
owner.*—Code, § 2182. In any case, the mode of assess-
ing and collecting taxes on corporate stock, as provided
by our statute, has been adopted and long followed in
many of the states, and without exception, we believe,
held to be free from constitutional or other objections.

A learned commentator says: "Many statutory
schemes of taxation, for the sake of greater certainty
and convenience in assessing and collecting taxes upon
shares, pursue the plan of assessing such taxes against
the corporation in the aggregate, or compelling the cor-
poration to make payment, and of allowing the corpo-
ration to deduct the same from dividends accruing to
the shareholders, or giving it a lien upon their shares,
or giving it a right of action against them, or some
other legal remedy for its reimbursement by them. It
has been held in many cases (which are cited) that
there is no constitutional or other objection against
such a statute."—2 Thompson on Corp. § 2914. And
Judge Cooley thus explains the propriety of such a sys-
tem: "For the most part, the taxes levied by the state
are collected of the persons taxed, or are enforced
against the property in respect to which they are im-
posed. In a few cases, however, in which no injustice
could result from such a course, the state may reach the

party taxed by indirection and collect in the first instance from some one else, who in turn will become collector from the person on whom the tax is really imposed. The reason is that in such cases it is more convenient to the state, and perhaps makes more certain the collection; and it could be resorted to only when the case is such that injustice could result to no one. A case of this kind is where the tax is imposed on the dividends or other receipts of shareholders from the profits of corporations, or upon their shares, and the corporation is required to make the payment, which it would then deduct from the payments to be made to shareholders."—Cooley on Taxation (2d Ed.) 432. And in a very learned opinion by Lurton, J., for the Tennessee court, dealing with statutes very like ours, it is said: "Is this plan for the collection of the tax upon shares of stock liable to taxation subject to any constitutional objections? We see none. It is nothing more than a garnishment proceeding against the corporation, to better secure the payment of the tax out of the dividends due or to become due. No injustice is done the company. The plan looks to a cheap, speedy, and sure means of collecting a tax otherwise exceedingly difficult to either assess or collect. The shares are the things taxed. It matters not who may own them. The dividends attach to and belong to the owner of the shares at the time it is declared, and out of these dividends the sum necessary to pay the tax must be reserved. Such methods of collection are not at all unusual or unique."—S. N. Street R. Co. v. Morrow, 87 Tenn. 406, 11 S. W. 348, 2 L. R. A. 853, 859. To the same effect are the decisions of the federal Supreme Court: National Bank v. Commonwealth, 9 Wall. 353, 19 L. Ed. 701; Cummings v. National Bank, 101 U. S. 153, 156, 25 L. Ed. 903.

4.   We are unable to discover any merit in the contention of relators that the valuation of *the corporation's property* by the commissioners' court and the State Tax Commission, in July, 1909, is a bar to the assessment of escaped taxes on the corporate stock of shareholders, whether the assessment be in the name of the shareholders or of the corporation, since the two classes of property are wholly distinct.—*State v. Kidd,* 125 Ala. 423, 28 South. 480.   Moreover, such a defense, if existent, would be plainly available in the commissioners' court, and would furnish no reason for a resort to the extraordinary remedy here invoked.

5.   Our statute (subdivision 9, § 2082) by its very terms is careful to guard against double taxation by means of the assessment of both corporate ·property and corporate stock, by requiring the assessor to deduct from the estimated value of the stock the already assessed value of the corporate property; the remainder *only* being the assessable value of the stock.   If the assessment returned by the assessor does not conform to this requirement, the facts should by the corporation be made known to the commissioners' court.   To correct such an error is one of its primary functions, and in the direct line of its jurisdiction.   Failing there, the corporation may appeal to the circuit court for the full vindication of its legal rights in the premises.

It results that the petition shows no ground for resort to the writ of prohibition, and the rule nisi and the temporary writ should have been denied; and a judgment and order will be here entered dissolving the writ, discharging the rule, and dismissing the petition.

Reversed and rendered.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.