[Civil No. 4433. Filed February 2, 1942.]

[121 Pac. (2d) 647.]

FRANK CULLEN BROPHY, as Trustee; FRANK C. BROPHY; J. E. BROPHY, JOHN B. CROW-ELL; M. J. CUNNINGHAM; THE BANK OF DOUGLAS, as Administrator of the Estate of Adeline S. Greene, Deceased; GRACE M. ME-GUIRE, as Administratrix of the Estate of S. F. Meguire, Deceased; PHOENIX TITLE & TRUST COMPANY, a Corporation, as Trustee; THE BANK OF DOUGLAS, as Executor of the Estate of C. Viola Slaughter, Deceased; C. S. THOMPSON; H. W. WILLIAMS; J. S. WERTZ and THE BANK OF DOUGLAS, a Corporation, Appellants, v. JAMES L. POW-ELL, as County Assessor of COCHISE COUNTY, ARIZONA, Appellee.

Messrs. Gilmore & Herring, for Appellants.

Mr. John Pintek, County Attorney, and Mr. John F. Ross, Deputy County Attorney, for Appellee.

LOCKWOOD, C. J.—Frank Cullen Brophy, as trustee, and various other parties, called plaintiffs, brought suit against James L. Powell, as county assessor of Cochise County, seeking to enjoin him from assessing the shares of stock in the Bank of Douglas, an Arizona corporation, which belonged to the various plaintiffs in the action. A temporary restraining order was issued without notice, and the matter coming before the court on a motion to strike and dismiss, after consideration the motion to dismiss was granted and the temporary restraining order dissolved, whereupon this appeal was taken by plaintiffs.

The question involved is the constitutionality of sections 73-204, 73-205, 73-206, and 73-207, Arizona Code 1939, being our revenue statutes providing for the assessment of banking and other corporations or associations engaged in the business of using money to make money. These sections read as follows:

"73-204. *Assessment of property and shares of stock in corporations—Banking, building and loan associations or corporations, and finance corporations.*—The property of corporations shall be assessed and taxed and no assessment shall be made of the shares of stock of corporations, nor shall any holder thereof be taxed for such shares. The foregoing provision shall not apply to a banking corporation, building and loan associations or corporations, and a corporation or association engaged in the business of using money wherewith to make money for the owners of its shares, the shares of stock of which shall be assessed and taxed as other property, in the name of the shareholders of the several shares thereof, to be entered and taxed in the name of, and be payable by, such corporation or association."

"73-205. *Statement to assessor by banking corporation and shareholders—Tax payable by corporation.*—Upon the demand of the assessor, the officers in charge of any such banking corporation or such corporation or association engaged in the business of using money wherewith to make money, shall make out and deliver to said assessor a sworn statement showing the number of shares, the name and residence of each shareholder, and the number of shares owned by him; the surplus, reserve fund, and undivided profits; and the par and market value of the shares. The full cash value of such shares shall be ascertained according to the best information which the assessor may be able to obtain, whether from any return made to any officer of the state or the United States, from actual sales of the stock, or from other trustworthy sources. Every such shareholder shall, where such corporation or association is located, render at their full cash value to the assessor all shares owned by him therein, and if the shareholder fail to do so, the assessor shall list and assess such unrendered shares as other unrendered property. The taxes due thereon shall be paid by such corporation or association, and shall be a lien against and assessed to such shares of stock, and no such corporation or association shall pay any dividends to any shareholder who is in default in the payment of taxes due on his shares, nor shall it permit the transfer on its books of any shares the owner of which is in default in the payment of his taxes on the same."

"73-206. *Situs of stock — Where tax payable.*—Every such corporation or association, for the purpose of said assessment, shall be considered as located in every county, city or town wherein it has an office for the purpose of carrying on its business, and the shares shall be subject to taxation in any county, city or town wherein it has such office. The officer of such corporation or association shall state in his statement if his association or corporation is subject to taxation in more than one (1) county, city or town, and the proportion of its assets situated in each thereof. The shares of such corporation or association shall be taxed in each county, city or town for

only such portion of their value as the assets situated in that county, city or town bear to the assets of the entire corporation or association. When a bank maintains branches or conducts business in more than one (1) county, city or town, the assessed value of the capital stock shall be apportioned among the several counties, cities and towns in which the main office or such branches are maintained or business conducted, and the amount apportioned to each county, city or town shall not be less than the actual cash value of the real and personal property of such bank situated in such county, city or town.''

"73–207. *Failure of officer to make statement— Mandamus—Penalty.*—If the officer in charge of any such corporation or association shall fail, on the demand of the assessor, to make and file the sworn statement as hereinbefore provided, the assessor shall at once, in the name of the state, at his relation, institute *mandamus* proceedings to compel the filing of such statement, and in addition to the taxes due, the said officer in charge shall forfeit an amount equal to double the amount of said taxes as assessed, to be recovered by the county in which the statement should have been filed, in a civil action in its name, to be paid into the school fund of said county.''

It is urged by plaintiffs that these sections are unconstitutional for several reasons. The order to dismiss was obviously based upon a conclusion of the trial court that none of the objections to the constitutionality of the statutes above set forth were valid, for if any one of them was, the court would have denied the motion. We, therefore, consider each objection raised by plaintiffs. In doing so we must adhere to the well-established principle that only those who belong to the class for whose sake the constitutional protection is given may be heard to urge the unconstitutionality of a law, and that it must be shown the unconstitutional feature injures them. *Hatch* v. *Reardon,* 204 U. S. 152, 27 Sup. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736; *Premier-Pabst Co.* v.

*Grosscup,* 298 U. S. 226, 80 L. Ed. 1155; *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 57 Sup. Ct. 524, 81 L. Ed. 814.

These objections were based on seven grounds. The first is that the statutes in question exempt the real and personal property of banks from taxation, in violation of section 2, article 9, of the Constitution of Arizona. This section, so far as material, reads as follows:

" . . . All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law. . . . "

And it is admitted that the real and personal property of banks is not exempt from taxation under the constitutional provision.

It is contended, however, by defendant that the form of taxation set forth in the statutes is not an exemption contrary to the constitutional provision, but merely a substitution of one method of ascertaining the *ad valorem* tax on the property of banks for another. It is not disputed that property may be classified by the legislature for the purpose of taxation if the ground of the classification is reasonable and its results do not violate constitutional provisions. The nature and functions of banking and money-loaning organizations are so different from those of the ordinary individual, partnership or business corporation, that we think they may well be put in a separate class for taxation, provided the effect of such classification does not violate the Constitution. In determining the purpose and effect of the classification thus made by the legislature, we think it necessary to consider at some length the history of the statutes in question that we may ascertain

whether they are, in reality, an attempt to exempt real and personal property of banks from taxation, or merely to assess and tax it in a manner different from that used for other similar property. This involves a determination of the meaning of the phrase "double taxation" under our law. The technical legal interpretation adopted by most of the courts when considering constitutional prohibitions against double taxation means taxing twice for the same purpose in the same period the same property in the same taxing area. Cooley on Taxation, 4th Ed., par. 223. And it is generally held by the courts that the taxing of two different interests in the same property is not obnoxious to constitutional or statutory provisions against double taxation, even though they may represent a duplication of the same fundamental values. Thus it is very generally held that both the physical property of a corporation and the shares of stock of the corporation in the hands of the stockholders may be taxed without violating a provision against double taxation. Our legislature, however, very early adopted the popular and common sense view of the meaning of "double taxation," which is to the effect that it applies to any case where the same intrinsic values are taxed twice, even though the legal and ultimate equitable titles thereto might be in separate and independent hands. Section 2633, Revised Code of 1887, contains a specific declaration to that effect, so far as corporations are concerned:

"Shares of stock in a corporation possess no intrinsic value over and above the actual value of the property of the corporation for which they stand and represent and the assessment and taxation of such shares and also of the corporate property would be double taxation. Therefore all property belonging to corporations shall be assessed and taxed, but no as-

sessment shall be made of shares of stock, nor shall any holder thereof be taxed therefor.''

An examination of our statutes shows that policy in regard to the taxation of the physical property of ordinary corporations and the shares of their stock in the hands of the shareholders has been followed to and including the present time. It is true that from 1913 on the first sentence of the section, giving the reason for the prohibition against taxing the shares of stock, was omitted, but we think it is obvious that since the conclusion from the reasoning was continued as law, this omission was merely because the reason was considered so obvious that it was unnecessary to repeat it. Later, however, the legislature adopted Act No. 85 of the laws of 1893, which was amended by Act No. 51 of the laws of 1897, setting up in substance the provisions of the present law that shares of stock in banking corporations should be taxed instead of the property of such corporations. We construed these two Acts in *Western Investment Banking Co.* v. *Murray,* 6 Ariz. 215, 56 Pac. 728, and held that construing section 2633, *supra,* together with the Acts, it was the intention of the legislature to adhere to its declaration that the property of a corporation and the shares of stock in the hands of the stockholders represented the same value and should not both be taxed, but that it changed the method of taxing banking corporations so that the shares of stock were taxed rather than the property of the corporation, while leaving the rule as to the taxation of the property instead of the stock in effect as to all other corporations. We also stated that the obvious reason for this change was that under the law as it existed before the adoption of the Acts all of the property, both real and personal, of state banks was subject to taxation, but that under section

5219 of the Revised Statutes of the United States, 12 U. S. C. A., § 548, only the real property of national banks could be taxed by the territory, and that the change was made so as to permit, in effect although not in form, the taxation of all the values of both real and personal property of both classes of banking institutions. In other words, the new method of taxation was not intended as an exemption of any property from the *ad valorem* tax but as an inclusion of property which would otherwise escape such tax entirely. It is held that when shares of stock in the hands of stockholders are made not taxable, while the property of the corporation itself is taxed, it is not an exemption from taxation within the meaning of Constitutions similar to ours, but merely a substitution of one manner of reaching property by an *ad valorem* tax for another. *Carroll* v. *Alsup,* 107 Tenn. 257, 64 S. W. 193. And the obvious corollary is that the same is true when the situation is reversed.

It is true that we have held in the cases of *Miners & Merchants Bank* v. *Supervisors,* 55 Ariz. 357, 101 Pac. (2d) 461, and *Powell* v. *Gleason,* 50 Ariz. 542, 74 Pac. (2d) 47, 114 A. L. R. 838, that an excise tax may not be substituted for an *ad valorem* tax, but both the tax involved in the present suit and a tax assessed directly to the bank on its real and personal property are *ad valorem* taxes. The only difference is that in one case the value of the real and personal property is assessed directly, while in the other it is reflected in the value of the stock.

It is urged that we have held that these laws do exempt the real and personal property of banks from taxation. *Western Investment Banking Co.* v. *Murray, supra; People's Finance & Thrift Co.* v. *Pima County,* 44 Ariz. 440, 38 Pac. (2d) 643; *Gibbons* v. *White,* 47 Ariz. 180, 54 Pac. (2d) 555. It is

true that in these cases we held that the tax is against the stockholder and not against the bank, and that the corporation merely appears as an agent for the stockholders in the assessment and collection of the tax. But this by no means implies that the property, the legal title to which is in the bank, is not in effect assessed and taxed under these statutes. The purpose of the constitutional provision is that all of the property in the state should bear its just burden of the taxes, and it makes no difference in whose name or under what description the property is assessed if both it and its valuation are properly represented on the tax roll, either directly or indirectly. In determining the value of the shares, each and every item of property of the bank and its value must be considered. We hold, therefore, that the statutes in question do not grant an exemption from taxation of the property owned by a bank, although its value only appears indirectly as one of the component elements of the value of the shares of stock in the hands of the stockholders.

What we have said disposes of the second objection to the effect that taxing both the shares and the property of the bank would be double taxation. Under our legislative interpretation of the phrase the proposition is doubtless true, but since we have held that under the statute the property of the bank itself is not directly subject to taxation, the objection is not well taken. *Western Investment Banking Co.* v. *Murray, supra.*

We then consider the third objection, which is that there is no method for equalizing the taxes. It is urged that we have held in *Maricopa County* v. *Trustees Arizona Lodge, etc.,* 52 Ariz. 329, 80 Pac. (2d) 955, that there must be a procedure or method for equalizing valuations of property before exacting

the tax, and if there is no method whereby the taxpayer may be heard to protest the valuation placed upon his property before such valuation becomes final, the tax is invalid. There can be no question as to the general rule thus stated, but we think that so far as the present tax is concerned, the taxpayer has an opportunity to have the valuation reviewed before it becomes final. The same objection was made in the case of *Powell* v. *Gleason, supra* [50 Ariz. 542, 74 Pac. (2d) 50, 114 A. L. R. 838], and we said:

" . . . It is, of course, elementary that in levying a tax having the actual value of certain property as one of its factors, whether it be strictly what is known as a direct property or an excise tax, the owner thereof must, at some time before the tax is irrevocably fixed, have an opportunity, as a matter of right and not of grace, to appear and be heard on the question of valuation before some tribunal which has the jurisdiction to determine the true value of the property. . . . There is nothing in chapter 66, *supra,* [Regular Session, Thirteenth Legislature] providing for such a hearing, but it has been urged that section 3136, Rev. Code 1928, gives it. This section reads as follows:

" 'Tax not to be contested unless paid; collection may not be enjoined. No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected, and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided.'

"We have had the meaning and scope of this section under consideration in a number of cases. In

*Yuma County* v. *Arizona & Swansea R. R. Co., supra,*
[30 Ariz. 27, 243 Pac. 907], in construing paragraph
4939, Revised Statutes of Arizona 1913 (which is
identical in substance with 3136, *supra*), we said:

" 'In *Arizona Eastern R. Co.* v. *Graham County,*
20 Ariz. 257, 179 Pac. 959, we used language that
might be construed as limiting the right of action un-
der paragraph 4939 to recover only when the law un-
der which it was levied was invalid. We do not
think such a contruction justified as we believe the
Legislature intended to give the taxpayer the right
to test the validity of the tax *upon any ground upon
which he has not had an opportunity to be heard un-
der other provisions of the law.'*

"And we have reaffirmed that holding in *State Tax
Comm.* v. *Board of Supervisors,* 43 Ariz. 156, 29 Pac.
(2d) 733. . . . In the case of *Sears, Roebuck & Co.* v.
*Maricopa County,* 41 Ariz. 304, 17 Pac. (2d) 1096, the
county assessor, acting under the provisions of sec-
tion 3081, Rev. Code 1928, attempted to collect per-
sonal property taxes. In order to prevent the dis-
traint and sale of its property, the company paid the
taxes to the assessor, and not to the treasurer, under
protest claiming that the valuation was excessive, and
thereafter brought suit against Maricopa county to
recover the excess. We think the only theory under
which that suit could have been brought against the
county is that section 3136, *supra,* was applicable for
the reason that the county assessor was acting as the
agent for the county, and that the payment to him
was, in effect, payment to the county just as much as
if it had been made to the treasurer. We hold, there-
fore, that any person aggrieved by the *prima facie*
valuation fixed by the assessor under chapter 66,
*supra,* had the right to pay the tax under protest, and
thereafter to bring suit to recover the excess under
the provisions of section 3136, *supra.* This right was
sufficient to satisfy the due process of law clause of
the Federal Constitution (Amendment 14). (Citing
cases)." (Italics ours.)

But, it is said, under the statute the au-
thorities look to the bank itself for the payment of the

tax, and that it may choose to pay it on the first day of May of the taxable year, and might fail to pay under protest, and that in such case the true owner of the shares would be without remedy. It is also contended that the question of paying under protest is left to the manager of the bank, and since he is merely the agent of the shareholder he has no authority to substitute his judgment for that of his principal as to whether the payment should be made with or without protest so as to bind his principal. We think, however, that since the statute itself constitutes the bank the agent of the shareholder for the purpose of payment, the reasonable implication is that in all matters regarding the tax it stands in the shoes of its principal and has the authority to pay with or without protest and bind the principal by such action. The shareholders, of course, have notice of the statute, and if they fail to take the proper steps to protect their rights, either by direct payment under protest, or by specific instructions to the bank as their agent to make the payment under protest, they may not say they did not have an opportunity to have the valuation of their stock determined under section 3136, *supra,* (73-841, Arizona Code 1939). As was said in *Corry* v. *Baltimore,* 196 U. S. 466, 25 Sup. Ct. 297, 301, 49 L. Ed. 556:

" . . . The condition attached by the Maryland law to the acquisition of stock in its domestic corporations, that the stockholders, for the purpose of notice of the assessment of the stock and proceedings for the correction of the valuation thereof, shall be represented by the corporation, is not, in our opinion, an arbitrary and unreasonable one, when it is borne in mind that the corporation, through its officers, is, by the voluntary act of the stockholders, constituted their agent, and vested with the control and management of all the corporate property,—that which gives value to the shares of stock, and in respect to which

the taxes are but mere incidents in the conduct of the business of the corporation. The possibility that the state taxing officials may abuse their power, and fix an arbitrary and unjust valuation of the shares, and that the officers of the corporation may be recreant in the performance of the duty to contest such assessments, does not militate against the existence of the power to require the numerous stockholders of a corporation chartered by the state, particularly those resident without the state, to be represented in proceedings before the taxing officials through the agency of the corporation.''

We hold, therefore, that if the taxpayer, acting either directly or through his agent, the bank, is dissatisfied with the valuation fixed on his shares, he may pay the tax under protest, and in an action under section 3136, *supra,* may have their true value determined.

The fourth objection is that it is the duty of the assessor to collect the tax immediately from the bank when he makes the assessment where the shareholder has not sufficient real estate within the county to pay the taxes, and that this gives no opportunity for an equalization of the tax imposed upon such shareholders. We think, in view of what we have said to the effect that the bank is the agent of the shareholders, both for the purpose of payment of the tax and also for the purpose of making a protest if it so desires or is so instructed by the shareholders, that legal opportunity is given to the shareholder to have the valuation of his stock reviewed, even though he owns no real estate in the county.

The fifth objection is that there is no provision to enforce the collection of the tax and that we have held under our statutes there is no provision for the seizure of intangible personal property to satisfy the tax assessed against such property. This is true so far as ordinary intangibles are concerned. *Mari-*

*copa County* v. *Trustees Arizona Lodge, etc., supra; State Tax Comm.* v. *Shattuck,* 44 Ariz. 379, 38 Pac. (2d) 631. But it will be noted that section 73–205, *supra,* provides:

" . . . The taxes due thereon shall be paid by such corporation or association, and shall be a lien against and assessed to such shares of stock, and no such corporation or association shall pay any dividends to any shareholder who is in default in the payment of taxes due on his shares, nor shall it permit the transfer on its books of any shares the owner of which is in default in the payment of his taxes on the same."

We think this sets up ample machinery for the collection of the tax. A similar situation arose in *American Coal Co.* v. *Allegany County Commrs.,* 59 Md. 185, and the court said:

"As we have already stated, the declaration proceeds as for taxes levied upon the property of the corporation, and therefore due from it, without reference to the assessment and levy upon the shares of the individual stockholders. The assessment of the tax was required to be upon the shares of the stock belonging to individual stockholders as such, and not as upon property belonging to the corporation, as in the case of the assessment of the real property, which was properly assessed to the corporation. The corporation, however, is required to pay the taxes assessed upon the shares of stock, and when it shall have paid such taxes, the same are directed to be charged to the account of the respective stockholders by the corporation. The corporation itself is under no duty or obligation to pay the taxes assessed upon the shares of stock of the individual stockholders, except as provided by the statute. But the statute having created the duty and obligation to pay, when the shares of stock are assessed to the individual owners, that duty and obligation on the part of the corporation may be enforced by a proper action at law,—the plaintiff, in such case, showing the right claimed to be within the provisions of the statute." See, also, *Court Com'rs.* v. *State,* 172 Ala. 242, 55 So. 623.

 And the bank is fully protected in reimbursing itself for the payment. A lien is specifically given it against the stock when it pays the taxes, and while there is no express method set forth in the statute for the foreclosure of this lien, we think it is obvious that it was intended that it could be foreclosed in the same manner as any other lien on property of this nature.

 It is urged that since the ownership of the stock follows the residence of the owners of the shares, the lien cannot be foreclosed against nonresidents. We think, however, this is not true. Ordinarily speaking, of course, the situs of intangibles follows the residence of the owner and is only taxable there. *Blodgett* v. *Silberman,* 277 U. S. 1, 48 Sup. Ct. 410, 72 L. Ed. 749; *Maricopa County* v. *Trustees Arizona Lodge, etc., supra; Oglesby* v. *Pacific Finance Corp.,* 44 Ariz. 449, 38 Pac. (2d) 646. It is usually recognized, however, that the state, if it desires, may fix a taxable situs within the state on the shares of a domestic corporation, such as defendant Bank of Douglas is, notwithstanding such shares are owned by nonresidents. *Corry* v. *Baltimore, supra.* Therein it is said:

"That it was rightly determined that it was within the power of the state to fix, for the purposes of taxation, the situs of stock in a domestic corporation, whether held by residents or nonresidents, is so conclusively settled by the prior adjudications of this court that the subject is not open for discussion. Indeed, it was conceded in the argument at bar that no question was made on this subject. The whole contention is that, albeit the situs of the stock was in the state of Maryland for the purposes of taxation, it was nevertheless beyond the power of the state to personally tax the nonresident owner for and on account of the ownership of the stock, and to compel the corporation to pay, and confer upon it the right

to proceed by a personal action against the stockholder in case the corporation did pay. Reiterated in various forms of expression, the argument is this: that as the situs of the stock within the state was the sole source of the jurisdiction of the state to tax, the taxation must be confined to an assessment *in rem* against the stock, with a remedy for enforcement confined to the sale of the thing taxed, and hence without the right to compel the corporation to pay, or to give it, when it did pay, a personal action against the owner.

''But these contentions are also in effect long since foreclosed by decisions of this court. *National Bank* v. *Commonwealth,* 9 Wall. 353, 19 L. Ed. 701; *Tappan* v. *Merchants' National Bank,* 19 Wall. 490, 22 L. Ed. 189. . . . ''

It is true that in *Oglesby* v. *Pacific Finance Corp., supra* [44 Ariz. 449, 38 Pac. (2d) 648], we said:

''To construe section 3069 [Rev. Code 1928] as authorizing the assessment and taxation of the shares of stock owned by persons not residents of the state would violate the due process clause of the Fourteenth Amendment to the Federal Constitution (section 1). [Citing cases].''

This language is correct as applied to the particular corporation involved in that action. The record shows that it was not an Arizona corporation but was domiciled in the state of Delaware, and that all of its stockholders were nonresidents of the state of Arizona. The language, however, was too broad as applying to domestic corporations. We think, on the contrary, that taking into consideration the provisions of section 3069, *supra,* (73-204, Arizona Code 1939), together with section 73-205 and 73-206, *supra,* the only implication which can be drawn is that the legislature intended to make the situs for taxation of the shares of stock referred to therein the state of Arizona, and particularly the place wherein such corporation does business.

Further, in the case of *Hook* v. *Hoffman*, 16 Ariz. 540, 147 Pac. 722, we have said that an action to determine the ownership of stock in a domestic corporation is a proceeding *in rem* so far that the courts of the state may bind all parties as to the ownership thereof, even though some of the owners are nonresidents of the jurisdiction, and that it is not necessary to maintain such an action that the certificates of stock be within the jurisdiction of the court.

It is next urged that since we have held other intangible property in the state has not been subjected to taxation that the taxation of bank shares is unconstitutional because it violates section 1 of article 9 of the state constitution, which reads as follows:

"*(Uniformity of taxes.)*—The power of taxation shall never be surrendered, suspended, or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

We have already said that the placing of banking and money-lending corporations, for the purpose of taxation, in a class entirely distinct from other institutions is legitimate and reasonable on account of the nature of such corporations, and have declared that the taxation of the shares of stock is, in effect, a taxation of the property of the corporation itself. Such being the case, we think it is also legitimate to place the shares of stock in such institutions held by individuals in a class separate from stock in all other corporations, or other intangible property.

The next objection is that the effect of our statutes is to place a burden on national banks different from and greater than that placed on other moneyed capital in the hands of the individual citi-

zens of Arizona which comes into competition with the business of national banks, contrary to the provisions of section 5219 of the Revised Statutes of the United States. The answer to that is that plaintiffs are maintaining this action as shareholders in the Bank of Douglas, a domestic corporation. Even assuming, without admitting, for the sake of the argument that the statutes might be invalid so far as stockholders in national banks are concerned, that would not affect the right of the state to tax its own corporations and their shareholders in this manner.

█ █ The uniformity clauses of the state constitution, so far as they affect taxation of property which the state may tax as a matter of right and not of privilege, are not violated because a uniform method of taxation adopted by the state is invalid as applied to property of a similar character which is taxable only by the grace of the federal government. If this were not so, then that government by fixing a method of taxation on property exempt by federal law from state taxation except as permitted by it, could compel the states to adjust their entire scheme of taxation to its method. The taxation provided by the sections under consideration is uniform and equal for all property which falls within the class set forth in the sections. If, *by reason of the federal statute,* it is invalid as applied to property which the federal government has authorized the state to tax only in a certain manner, it may well be that the owner of such property may object to the tax on the ground that it violates the federal statute, but this in no way affects the constitutionality of the law as regards plaintiffs. It is true that a number of state courts have held to the contrary. *Ashland County Bank* v. *Village of Butternut,* 208 Wis. 90, 241 N. W. 638, 82 A. L. R. 865; *State Bank of Omaha* v. *Endres,* 109 Neb. 753,

192 N. W. 322; *State* v. *Mady*, 83 Mont. 418, 272 Pac. 691; *Commercial State Bank* v. *Wilson*, 53 S. D. 82, 220 N. W. 152; *Voran* v. *Wright*, 129 Kan. 1, 281 Pac. 938. There is, however, eminent authority which sustains our views. In *Bankers Trust Co.* v. *Dept. of Treasury et al.*, 210 Ind. 530, 1 N. E. (2d) 935, the Indiana legislature adopted a gross income tax law covering all banks and trust companies, including national banks, and it was urged that the statute was not applicable to national banks because of the federal statute and, therefore, violated article 1, section 23 of the Constitution of Indiana, which provides:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The court said:

"We need not decide whether national banks are taxable under the statute in question, or whether the method therein prescribed conflicts with the federal statute permitting national banks to be taxed by the states. It is sufficient to point out that the statute does not grant privileges or immunities to national banks. It purports to tax all banks alike, whether state or national. . . .

. . . . . . . . . . . .

"Nor can it be supposed that section 23 of article 1, of the Constitution of Indiana, was intended to exempt banks and trust companies, which are creatures of the state of Indiana, from taxation, merely because the Federal Constitution exempts national banks from taxation by the state without the consent of Congress. Nor was it contemplated that the national Congress should dictate to the state Legislature whether or not banks and other competing moneyed capital should be taxed at all, and, if taxed, the manner in which they shall be taxed. If national banks are exempt from tax under the Gross Income Tax Law, it is not because of any act of General As-

sembly, but because of an act of Congress, and if privileges or immunities are granted, the grant was not by the General Assembly, but by Congress, and the General Assembly has not violated the constitutional provision.''

In *City of Shelbyville* v. *Citizens Bank*, 272 Ky. 559, 114 S. W. (2d) 719, 722, the court said, after quoting from *Bankers Trust Co.* v. *Dept. of Treasury et al., supra:*

''It is conceivable that the imposition of license taxes upon state banks and trust companies by municipalities might become so burdensome as to compel such banks to take out national bank charters, but whether the imposition of taxes upon state banks, which cannot be imposed upon national banks, shall be permitted is a question of policy to be determined by the Legislature.''

The Supreme Court of the United States, in *Union Bank & Trust Co.* v. *Phelps,* 288 U. S. 181, 53 Sup. Ct. 321, 322, 77 L. Ed. 687, 83 A. L. R. 1438, held:

''To accept the doctrine that as the states can only tax a federal instrumentality when permitted by Congress, therefore they cannot tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the Fourteenth Amendment, would be both illogical and destructive of their proper independence.

''Such instrumentalities are exempted from state taxation without the express consent of Congress, by the Federal Constitution. They are of a class wholly distinct from the property of ordinary corporations or individuals, and this fact cannot be disregarded by the state. If the state sees fit to tax unrestricted property within her jurisdiction, and to omit national bank shares, the classification cannot be said to be arbitrary and wholly unreasonable; the basis of it is plain enough. It may be vastly more important for the state to omit national bank shares and tax ordinary moneyed capital according to a plan not permissible in respect of national bank shares, rather

than conform to the standard prescribed by Congress. There is nothing to indicate that Congress ever supposed that mere establishment of a national bank within a state could upset the scheme for taxation, theretofore entirely proper, by producing conflict with the Fourteenth Amendment. This view would subject the taxing power of the state to the will of Congress far beyond what is necessary for the protection of federal agencies. . . . ''

We think the reasoning in these last cases far more satisfactory than that in the cases supporting the contrary view, and, therefore, hold that a statute equal in its terms as applied to state and national banks does not violate the uniformity clauses of the state constitution or the Fourteenth Amendment to the federal constitution in its applicability to state banks and similar institutions, merely because it may be invalid on account of the federal statute as applicable to the taxation of national banks by the state.

This disposes of all the specific questions of unconstitutionality raised by plaintiffs. As we have pointed out, while they are in many respects plausible, they are, in our opinion, untenable.

The complaint did not state facts sufficient to constitute a cause of action based on the unconstitutionality of sections 73–204, 73–205, 73–206 and 73–207, *supra,* as applied to plaintiffs herein, and the judgment of the lower court is affirmed.

McALISTER and ROSS, JJ., concur.